L. & N. R. R. Co. v. McCandless (2 Cases).

Case 15—ACTIONS BY HELEN McCANDLESS AND HATTIE
    McCANDLESS AGAINST THE LOUISVILLE & NASH-
    VILLE R. R. CO. FOR DAMAGES FOR PERSONAL
    INJURIES—JUNE 5.

## L. & N. R. R. Co. v. McCandless (2 Cases.)

123   121
135   235
j135   250

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for Plaintiffs.  Defendant appeals.  Re-
versed.

1. Railroads—Running Trains—Necessary—Rules—Sounding Whis-
   tle—Discretion of Company—Railroad companies may establish
   such reasonable rules for the conduct and regulation of their
   business. as appear to be necessary in the operation of trains
   and the discretion as to how many times the whistle shall be
   sounded and the character of the blasts should be lodged in
   the hands of those who are charged with responsibility for
   the failure to properly exercise it.
2. Same—Frightening Horses—Injury to Persons Driving—
   Knowledge of Company of Danger—Liability—Under Kentucky
   Statutes, section 786, requiring that persons operating rail-
   road engines shall ring the bell or sound the whistle contin-
   uously or alternately for fifty rods before reaching highway
   crossings, the company may either ring the bell continuously
   or blow the whistle continuously for such distance, and no
   liability can attach to it therefor, when the persons in charge
   of the train do not discover, and are under no duty to
   discover, that any person or animal is put in peril by reason
   of the noise made by such ringing or whistling, and it is im-
   material whether the whistle is coarse, loud or shrill.

CHARLES H. MOORMAN and BENJAMIN D. WARFIELD
for appellants.

### POINTS AND AUTHORITIES.

1.  The court should have given the peremptory instruction at
the conclusion of appellee's evidence, or at the conclusion of all
the evidence. (Ohio Valley R. Co.'s Recvr., &c., v. Young, 19
R. 158; L. & N. R. Co. v. Penrod's Admr., 108 Ky. 172; L. & N.
R. Co. v. Smith, 107 Ky. 178; Hudson v. L. & N. R. Co., 14
Bush, 303.)

2. The instructions given to the jury are erroneous and prejudicial, particularly Instruction No. 4. This instruction should have been qualified by instruction "B" offered by appellant, or instruction "C" or "D" should have been given in lieu of it. (South Florida R. Co. v. Rhodes, 23 Am. St. Rep. 506; I. C. R. Co. v. Whitmore, 43 Ill. 420; Vetter v. Fellow, 20 N. Y. 126; Elliott on Railroads, § 202; St Louis, Iron Mountain & Southern R. Co. v. Adcox, 40 A. & E. R. Cases, 682; L. & N. R. Co. v. Fleming, 18 A. & E. R. Cases, 347; Maroney v. Colony, &c. R'y Co., 106 Mass. 153; Yorton v. Milwaukee, &c., R'y. Co., 54 Wis. 234; Pittsburgh, &c., R'y Co. v. Nunzum, 50 Ind. 141; Pearce v. Randolph, 12 Texas, 290; L. & N. R. Co. v. Breeding, 13 R. 397; L. & N. R. Co. v. Raine, 15 R. 424; Henderson Trust Co., &c., v. Stewart, &c., 108 Ky. 167-171).

3. The jury should have been instructed in regard to the right and duty of the engineer to sound the whistle. Therefore instruction "E" should have been given. (L. & N. R. Co. v. Smith, 107 Ky. 178.)

4. The admission of life tables in evidence was erroneous, as it was not shown that appellee's injuries are permanent. (Greer v. L. & N. R. Co., 94 Ky. 169; Sutherland on Damages, § 455.)

5. Counsel's closing argument to the jury was improper, and the refusal of the court to exclude the improper statements from the jury was prejudicial to appellant. (I. C. R. Co. v. Whitmore, 43 Ill. 420; Vetter v. Fellow, 20 N. Y. 126; U. P. R. Co. v. Field, 137 Fed. 14; L. & N. R. Co. v. Smith, 27 R. 257; I. C. R. Co. v. Jolly, Ib. 118; L. & N. R. Co. v. Carter, Ib. 748.)

6. The verdict is not sustained by sufficient evidence, and should have set aside, (L. & N. R. Co. v. Carter, 23 R. 2020; L. & N. R. Co. v. McGary's Admr., 104 Ky. 509; L. & E. M. Co. v. Gilliland, 24 R. 2081; L. & N. R. Co. v. Hall, 115 Ky. 561.)

OMEARA & JAMES for appellees.

D. A. McCANDLESS of counsel.

### POINTS AND AUTHORITIES.

1. The judgment was proper, because the appellees were injured as a result of the unnecessary and negligent use of the steam whistle. (Bittle v. Camden, &c., R. R. Co., 55 N. J. Law, 615; Gibbs v. Chicago, &c., R. R. Co. 26 Minn. 427; Fritz v. New England R. R. Co. 27 Conn. 503; L. & N. R. R. Co., v. Smith, 21 Ky. L. R., 857.)

2. The peremptory instruction was properly refused. (L. & N. R. R. Co., v. Howard, 82 Ky. 212; Fugate v. The City of

L. & N. R. R. Co. v. McCandless (2 Cases).

Somerset, 16th Reporter, 807. Shelby v. C. & O. R. R., 85 Ky., 224; Eskridge v. Cincinnati, &c., R. R. 89 Ky., 367; Buford v. L. & N. R. R. 82 Ky., 286; Dick v. L. & N. R. R. 23 Reporter, 1068; 19th Reporter, 785; 20 Reporter, 169; 104 Ky., 673.)

3. The instructions were proper, and the court committed no error in giving a refusal of same.

4. The court committed no error in admitting the mortality tables as evidence. (L. & N. R. R. Co. v. Kelley's Admr., 100 Ky., 421.)

5. The argument of counsel was within the record and not improper.

6. The verdict is not flagrantly against the evidence, nor is it against the weight of the evidence, and it should not therefore be disturbed. (I. C. R. R. Co. v. Proctor; 89 S. W. R. 715; L. & N. R. R. Co. v. Helm, 89 S. W. R., 713; Varble v. Figley 14 Bush 698; Williams v. Roberts, 14 Bush, 776; 2 Reporter 228; 3 Reporter, 255; 3 Reporter, 618; 94 Ky., 215; 15th Reporter, 724, and 16th Reporter, 630.)

OPINION BY JOHN D. CARROLL, COMMISSIONER.—Reversing.

These two appeals involving the same questions of law and fact are heard together. The appellees were driving in a buggy on a public road leading to Upton, Ky. Alleging that the horse they were driving was frightened and made to run off by the unnecessary, negligent, continued, and wanton whistling of one of appellant's engines, causing them to be thrown out of the buggy and severely injured, they brought these actions against the company, and on the trial of the cases each of them recovered a judgment, to reverse which these appeals are prosecuted.

The evidence shows that the public road and the railroad run parallel with each other for nearly a mile north of Upton, and that at the point where the whistling occurred the roads are about 300 feet apart. The public road crosses the railroad on a grade crossing immediately north of the station, and the railroad has a whistling post for the station about three-quarters

of a mile north of it. The train, which was a freight, was going south, and the engine generally used in the passenger service was equipped with a coarse passenger whistle. Several witnesses for appellees testify that the whistling from a point a short distance north of the whistling post was unusual and startlingly loud long, and continuous, and that the whistle was sounded as many as fifty times, and the character of the whistling was such as to attract the attention of persons in the immediate neighborhood. The engineer and trainmen testified that the whistle was only sounded 13 times, and that this number of signals was required by the rules of the company—that the first signal given was a station whistle, followed by two short blasts in answer to a signal from the conductor not to stop, then two long and two short blasts were given for the railroad crossing, followed by four short ones for the semaphore at the station, which was answered by two others. It is conceded that the persons in charge of the train did not see the appellees on the public highway, or discover their peril, or that their horse was frightened. They were so far distant from the railroad that persons operating the train were not charged with any duty to either keep a lookout for or see them, and therefore the question as to the duty of the persons in charge of trains, in respect to sounding the whistle or making other noises calculated to frighten horses, when they see, or in the performance of their duty should see, that animals close to the track are frightened, and the persons in charge of them placed in peril does not enter into this case.

Railroad companies may establish such reasonable rules for the conduct and regulation of their business as appears to be necessary in the operation of trains, and the discretion as to how many times the whistle shall be sounded and the character of the blasts

should be lodged in the hands of those who are charged with responsibility for the failure to properly exercise it. Railroad companies for the protection of passengers and the public generally, are obliged to have fixed rules for the government of their employes, and among these are the number of times that the whistle shall be sounded in appoaching railroad stations, and in giving such other signals as the business requires, and it is fair to assume that the companies charged with the duty of looking after the lives and property intrusted to their care, and who are held to a strict accountability to the public will establish such rules for the operation of their trains in reference to the matter of whistling as experience and judgment have pointed out as best adapted for the purpose, and these rules the company can require all its employes to obey, and hold them answerable for failure to observe. It does not appear that the rule adopted by the company as to the number of times the whistle should be sounded for Upton station was unreasonable or unnecessary, nor does the fact that the whistle had a peculiar tone add anything to the liability of the company. The question whether a whistle is coarse or fine, or a passenger or freight whistle, or the sound pleasant or disagreeable, or shrill or loud, cannot affect the question. The law has not defined the quality of the whistle that shall be placed on steam engines, nor will the court undertake to prescribe one. This is a matter which must be left to the good judgment of the persons in charge of the road

Ky. St. 1903, § 786, requires that the engine bell shall be rung or the whistle sounded for a distance of at least 50 rods from the place where the road crosses upon the same level a public highway, and that the bell shall be rung or whistle sounded continuously or alternately until the engine has reached the crossing. Under this statute, and for the purpose of complying

with the provisions thereof, railroad companies may
either ring the bell or sound the whistle continuously
or alternately in approaching a crossing, and may
make such rules for the government of their employes
in charge of trains as to the number of times the whis-
tle shall be sounded as may be necessary to ob-
serve the statute, in connection with ringing the bell.
The statute  leaves the number of times the whistle
shall be sounded in the discretion of the railroad
companies, and under this statute the company may
either ring the bell continuously or sound the whistle
continuously, and in neither event can any liability
attach to it when the persons in charge of the train
do not discover, and are under no duty to discover,
that any person or animal is put in peril by reason of
the noise made by ringing the bell or sounding the
whistle. Where the law makes it the duty of a person
to do a certain thing, he will not be guilty of action-
able negligence in doing it, unless the thing required
is negligently done or the failure to observe the law
is made necessary to avoid injury to some person
discovered to be in peril.  Under the facts of this
case, if the whistle was sounded as many as fifty
times, as witnesses for appellee say it was, the com-
pany would not be guilty of negligence, as under the
rules of the company, and to comply with the statute,
the persons in charge of the train might have sounded
the whistle almost continuously from the time it was
first blown for the station until the grade crossing was
reached.  In Hudson v. L. & N. R. R. Co., 14 Bush,
303, this court said: "Steam whistles attached to
locomotive engines are useful and convenient, if not
necessary, to the safe and efficient operation of rail-
roads, and when prudently used are useful and benefi-
cial both to the railroad company and to the public,
and the blowing of such whistles is not *per se* unlaw-
ful.  In order to recover for injuries
resulting from their use, it must be shown that the

circumstances attending their use were such that a prudent regard for the rights of others forbade it." Kentucky & Indiana Bridge Co. v. Montgomery, 67 S. W. 1008, 68 S. W. 1097, 24 Ky. Law Rep. 167. In L. & N. R. R. Co. v. Smith, 107 Ky 178, 21, Ky. L. R. 857, 53 S. W. 269, which was an action to recover damages caused by a horse on a parallel highway becoming frightened, at the whistling of an engine, the court said: "The instructions, so far as they permit a recovery for the whistling by which the horses were frightened, if the employes saw that if they continued to blow it would cause the horses to be frightened, are proper and the law, but there is no rule of law that would require employes in charge of an engine to discover the condition of the team or person on a highway running parallel with a railroad. While it is not their duty to discover such things, yet, if the employes do see the apparent danger, it then becomes the duty of such employes to use care to avert injury. As to persons not on the railroad, the obligation to observe care begins when the danger is discovered."

It being conceded that the persons in charge of the train did not see the horse of appellees, or discover that it was frightened by the whistling, and that the horse was so far distant from the railroad as not to impose any duty upon the trainmen to discover its fright or the peril appellees were placed in, there can be no recovery in these cases, as it does not appear that the whistle was wantonly, negligently, or unnecessarily sounded. Therefore the peremptory instruction asked for in each case should have been given.

The judgment in each case is reversed, with instruction to proceed in conformity to this opinion.