CASE 30.—ACTION  BY  SOUTH  CONWAY  AGAINST  THE
LOUISVILLE & NASHVILLE RAILROAD COMPANY.
November 9, 1909.

# Conway  v.  Louisville  &  Nashville  R. R.  Co.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1.  Railroads—Operation—Accidents ,at Crossings—Precautions
as to Persons Near Crossing.—Those in charge of a railroad
engine are not bound to take notice of the conduct or fright
of a horse on a parallel highway, or to stop or slacken the
speed of the train to avoid a possible collision, unless the horse
is so close to the railway that the engine operatives can, by
the exercise of ordinary care, discover that the horse is
frightened, and the attitude of the horse or the immediate
conditions are such as to lead a person of reasonable pru-
dence to believe that there is danger of a collision.

2.  Railroads—Operation—Accidents at Crossings—Signals from
Trains.—Under the statute requiring all trains to give the
statutory signals of their approach to a grade crossing, the
failure to give such signal is actionable negligence, for which
one injured in consequence thereof may recover.

3   Railroads—Operation—Accidents at Crossings—Contributory
Negligence.—While travelers on a public highway crossing
a railroad may rely for protection on the statutory signals
required to be given by trains, failure to give the signals does
not relieve the travelers from the duty of exercising ordi-
nary care for their own safety.

4.  Negligence—Contributory Negligence—Questions for Jury.—
The question of contributory. negligence is generally for the
jury.

5.  Negligence—What  Constitutes.—To  constitute  actionable
negligence, there must be negligence and injury resulting as
a proximate cause of it.

6.  Railroads—Operation—Accidents  at  Crossings—Evidence.—
Evidence held insufficient to show that the failure of defen-

Conway v. Louisville & Nashville R. R. Co.

dant railroad to give the statutory signals at a crossing caused plaintiff's horse to run away and injure him through a collision with the train.

IRA JULIAN for appellant.

1. If there was any evidence tending to show, or from which the jury could have reasonably inferred the alleged negligence, and that the injury was caused thereby, the case should have been submitted to the jury. Dodge v. Bank Ky., 9 Ky., 610; Bishop v. McNary, 41 Ky., 132; Martin v. Ry. Co., 29 Ky. L. R., 148.

2. The questions as to the proximate cause of the injury was a question of fact for the jury. Gen. Pass. Ry. v. Chatterson, 17 Ky. L. R., 5; Ashland Coal Ry. v. Wallace, 19 Ky. L. R., 849; L. & N. v. Mitchell, 87 Ky., 327; Connell v. C. & O. Ry. Co., 22 Rep., 501.

3. It is the duty of those in charge of trains to give some timely warning of its approach to a public crossing for the protection of those who may be riding or driving on the highway, that they may secure themselves against injury by reason of the frightening of horses. Encyc. of Law, Vol. 8, page 422; Rupard v. C. & O. Ry. Co., 88 Ky., 280; Hudson v. L. & N. R. R., 77 Ky., 303; C. & O. Ry. v. Ogls, 24 Ky. L. R., 2160.

And this Common Law duty is emphasized in our Statute. Section 786 Ky. Statutes; N. C. R. R. v. Higgins, 29 Ky. L. R., 89; L. & N. v. Ueltschi, 29 Ky. L. R., 1136.

4. Failure to give the crossing signal was the proximate cause of the injury to this boy. Ill. Cent. R. R. Co. v. Mizell, 18 Ky. L. R., 738; L. & N. R. R. v. Armstrong, 32 Ky. L. R., 252.

5. Negligence of train men in failing to keep a lookout, at public crossing, and check train to avoid injury, was gross negligence. See diagram used on the trial; A. M. and Eng. Encyc. of Law, Vol. 8, p. 393; and evidence of South Conway and his father, J. P. Conway; L. & N. R. R. Co. v. Getz's Adm'r, 79 Ky., 442.

6. If the evidence of South Conway was true (and there is no evidence to the contrary) then the train men could not avoid seeing the boy and horse, when they overtook or passed them on the roadway, and they ran a race with them, for seventy-three yards, to the crossing where the collision occured and this was gross negligence which authorized an instruction for punitive damages instead of a peremptory instruction for defendant. Ill. Cen. R. R. v. Stewart, 23 Ky. L. R., 637; L. & N. v. Simpson, 23 Ky. L. R., 1044; C. & O. v. Dodge, 23 Ky. L. R., 1959.

McQUOWN & BECKHAM for appellee,

BENJAMIN D. WARFIELD of counsel.

Conway v. Louisville & Nashville R. R. Co.

## POINTS AND AUTHORITIES.

1. There is no denial of the allegation in the answer that the whistle was sounded and bell rung for the crossing; and that the horse ran into a car while the train was passing over the crossing. Newmans Pl. & Pr., Sections 207, 407; Preston v. Roberts, 12 Bush, 581.

2. The horse was alarmed by the noise of the train, and for this, and its consequences, the railroad company is not liable. L. & N. R. R. Co. v. Sights, 121 Ky. p. 210; Clinebell v. C., B. & Q. R. Co., 110 N. W., 347.

3. The horse, in its alarm, at the noise of the train, ran away and threw appellant. This and not the alleged failure to sound the signal, was the proximate cause of the injury. Hendricks v. F. E. & M. B. R. Co., 93 N. W., 141; Clinebell v. C., B. & Q. R. Co., 110 N. W., 347.

4. It is only where the traveler has listened for the crossing signal, and, not hearing it, has placed himself in a dangerous position, and thereby received the injury, that the omission to sound the signal has been held to be the proximate cause of the injury. Such cases are I. C. R. Co. v. Mizell, 18 Rep., 738; Rupard v. C. & O. R. Co., 88 Ky. 280; C. & N., Ry. v. Ogles, 24 Rep., 2160.

The rule of these cases does not apply where the traveler, in a position to see and hear, neither listens for the signal nor looks for the train, but recklessly places himself in a position of danger. He is not misled by the omission.

5. Neither does the rule of the Mizell and other like cases apply where a horse, ridden on a parallel road, is alarmed by the ordinary noise of the train, and, running away, injures the rider. In such case the railroad company is not liable because the horse was frightened by the noise, and the omission to sound the signal is not the cause of the fright or injury. Lynch v. N. P. R. Co., 84 Wis., 348; Pratt v. C. R. I. & P. R. Co., 107 Iowa. 287; Clinebell v. C., B. & Q. R. Co., 110 N. W. 347; Walters vs. R. Co., 104 Wis., 251.

6. The horse was daily ridden across the track, and along a parallel road, with only an overcheck rein, which was not sufficient to control it. It was well known that a great many trains passed daily. This was such contributory negligence as will bar a recovery. Givens v. L. & N. R. Co., 24 Rep., 1796; L. & N. R. Co. v. Webb, 99 Ky. 332; Graney v. Railway, 157 Mo., 666; Spilane v. Mo. Pac. Ry., 135 Mo. 414.

7. The company owed the Appellant, riding on a parallel road, no lookout duty. The duty of the trainmen was to watch the track and not animals straying or ridden in the highways or fields. L.

& N. R. Co. v. Smith, 107 Ky., p. 182; C. N. O. & T. P. Co. v. Bagby, 16 R. 533.

8. It is not the duty of an engineer to check or stop a train, even if he could do so, merely because a horse is running upon a parallel road. This duty does not arise until the horse is either upon, or so close to, the track as to clearly indicate a purpose to go upon it. C. N. O. & T. P. Ry. Co. v. Bagby, 16 R. 533; N. N. & M. V. R. Co. v. Howard, 14 R. 476; L. & N. R. Co. v. Murphy, 6 R., 664.

9. It was impossible to stop the train and avoid the accident when the horse turned from the parallel road and ran towards the crossing. L. & N. R. Co. v. O'Nan, 33 R., 462.

10. The proof does not connect the injury as a rational and proximate result of the alleged negligence, and hence there was no question for the jury. The peremptory instruction was, therefore, proper. C. N. O. & T. P. R. Co. v. Zachary's Adm'r, 32 R. C80; Hummer vs. L. & N. R. Co., 32 R., 1315.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, South Conway, a boy about 11 years old, brought this action against the appellee railroad company to recover damages for injuries received in a collision between a horse he was riding and one of its trains which was going east. Upon the conclusion of the evidence for the plaintiff the jury, under the direction of the court, returned a verdict in favor of the defendant company, so that the only question before us is whether or not there was sufficient evidence introduced on behalf of the plaintiff to take the case to the jury.

The negligence complained of in the petition as amended consisted in the failure of the train with which Conway's horse collided to give at the usual point, which was some distance west of the place the accident occurred, the statutory signals of its approach to a grade crossing, and the failure of the engineer in charge of the train to exercise ordinary

care to prevent injury after the peril of Conway was discovered. The substantial facts shown by the evidence introduced for the plaintiff are these: South Conway, an intelligent boy, lived with his father in a house situated on the north side of the railroad track a few yards from the point where a public road that runs east and west crosses the railroad at grade. On the south side of the railroad there is a road that intersects the county road a short distance south of the crossing, and runs west from the county road parallel with the railroad and a few feet distant from it for some 200 yards, and then goes down an embankment into a creek. On the day of the accident young Conway, desiring to water one of his father's horses, rode it across the railroad, and thence on the road parallel with the railroad to the creek. When he had watered the horse, and was on his way back home, riding along the road that runs by the side of the railroad, and at a point about 75 yards west of the crossing, a freight train, going at a high rate of speed in the same direction that Conway was riding, came up behind him and frightened the horse, causing him to run off. The horse ran towards the crossing, and reached it about the time that the engine did, and was struck by some part of the train; the collision throwing Conway off and breaking his arm. Conway had frequently ridden this horse to water along the same road, and had often met trains about the same place, but the horse had never before become frightened by them.

The law in respect to the duty of trainmen when they come upon a frightened horse being driven or ridden on a parallel road is well stated in L. & N. R. R. Co. v. Smith, 107 Ky. 178, 53 S. W. 269. In that case the horse

that Smith was driving on a road parallell with the railroad became frightened at the whistling of an engine, and ran away, injuring the driver. The lower court instructed the jury that they should find for Smith if they believed the employes on the train knew, or by the exercise of ordinary care could have known, that the whistling would cause the horse to run off. In holding this instruction erroneous the court said: ''The instructions, so far as they permit a recovery for the whistling, by which the horses were frightened, if the employes saw that if they continued to blow it would cause the horses to be frightened, are proper, and the law; but there is no rule of law that requires employes in charge of an engine to discover the condition of a team or persons on a highway running parallel with the railroad. * * * While it is not their duty to discover such things, yet if the employes do see the apparent danger, it then becomes the duty of such employes to use care to avert the injury. As to persons not on the railroad the obligation to observe care begins when the danger is discovered. The rule that requires a lookout duty in cities and towns and at public or private crossings does not extend to persons on a highway parallel to the railroad.'' In C., N. O. & T. P. Ry. Co. v. Bagby (Ky.) 29 S. W. 320, in considering a case very much like the one before us, the court said: ''It would therefore seem to follow that an engineer cannot be reasonably expected or required to look out for, or see, animals at all distances on each side of a railroad track, nor give the danger signals and stop the train to prevent injury to those straying, unless such animal is actually on the track, or else so near or in such attitude as would induce a person of ordinary care and prudence to believe there was danger of a colli-

sion.  In this case the engineer did not discover ap-
pellee's horse until the train was too near to the pri-
vate crossing to be checked in time to prevent the col-
lision.    *   *   *    Conceding the horse might have
been seen by the engineer at any point between appel-
lee's gate and the crossing, still he was not required
to stop the train unless he had reasonable grounds to
believe the horse would be permitted by its owner to
go upon the track in front of the train. It seems to
us the engineer was not in this case guilty of action-
able negligence, for it does not appear that he saw
the horse, or had reasonable grounds to believe it
would go upon the track in front of the train until it
was about to jump on it." In L. & N. R. Co. v. Bowen
(Ky.) 39 S. W. 31, the court, in considering a like
question, said: "It would therefore seem to follow
that an engineer cannot be reasonably expected or
required to look out for, or to see, animals at all dis-
tances on each side of the railway track, nor to give
the danger signal and stop the train to prevent in-
jury to those straying, unless such animal be actually
on the track, or else so near or in such attitude as
would induce a person of ordinary care and prudence
to believe that there was danger of a collision." To
the same effect, Kean v. Chenault, 41 S. W. 24; C. &
O. Ry. Co. v. Pace (Ky.) 106 S. W. 1176; L. & N.
R. Co. v. McCandless, 123 Ky. 121, 93 S. W. 1041.

The rule to be deduced from these cases is that the
persons in charge of an engine are not under any duty
to take notice of the conduct or fright of a horse on a
parallel highway, or to stop or slacken the speed of the
train to avoid a possible collision, unless it is so close
to the railroad that the persons in charge of the en-
gine could by the exercise of ordinary care discover
that the horse is frightened, and the attitude of the

horse or the immediate conditions are such as would
lead a person of reasonable prudence to believe there
was danger of a collision. The mere fact that the ingi-
neer saw Conway riding along the parallel road did
not require him to check his train, or sound any signal
nal or warning, or take any precaution to avert an in-
jury at the crossing, unless he knew, or by the exer-
cise of ordinary care could have known, that the horse
was frightened and running away, and the circum-
stances were such as to induce a person of reasonable
prudence to believe that he would attempt to cross the
track in front of the train or come in contact with it
at the crossing.  But we do not find in the record any
evidence or circumstance that would justify us in say-
ing that the engineer was negligent in failing to take
any action to avoid a collision with Conway. If we
should assume—and it would be a mere assumption—
that the engineer saw, or in the exercise of reason-
able care should have seen, the fright of the horse,
there is a total failure to show any fact or circum
stance from which it could be reasonably inferred that
by the exercise of ordinary care, or any degree of
care, the engine could have been stopped or the speed
of the train slackened so as to have avoided the col-
lision after the fright of the horse was, or should have
been discovered.   It is therefore manifest that, so
far as this charge of negligence is concerned, it was
not supported by sufficient evidence to warrant a sub-
mission of the case to the jury.

The next question is: ''Was the injury due to the
failure to give the crossing signals? It is by statute
made the duty of all trains to  give the statutory sig-
nals of their approach to a grade crossing, and the
failure to give these signals is actionable negligence
for which a recovery may be had by any person injur-

ed by a breach of duty in this respect. It is also true that travelers upon a public highway that crosses a railroad have the right to rely upon these signals for protection, although the failure to give the signals does not relieve the traveler from the duty of exercising ordinary care for his own safety; for, if by the exercise of ordinary care a traveler could see or hear an approaching train, he will be guilty of such contributory negligence as would defeat a recovery if he goes upon the crossing and receives an injury, although the signals were not given. Generally, the question of contributory negligence is for the jury, but a state of facts might be presented that would authorize the court to take the case from the jury. To illustrate: If it were shown that by exercising ordinary care a traveler could discover the approach of a train, and he testified that he did not take any precautions to learn whether a train was coming or not, and failed to offer any evidence upon this point, he could not recover, although the statutory signals were not given, unless it appeared that after his peril was discovered the persons in charge of the train could, by the exercise of ordinary care, have avoided injuring him. Southern Ry. Co. v. Winchester (Ky.) 105 S. W. 167; C., N. O. & T. P. Ry. Co. v. Champ (Ky.) 104 S. W. 988, 31 R. 1054. This rule, however, would not be applied if the traveler was killed, and there was no evidence introduced to show that he failed to exercise ordinary care for his own safety. As we said in L. & N. R. Co. v. Clark, 105 Ky. 571, 49 S. W. 323, 20 R. 1375, where this point was under consideration: "In this case plaintiffs intestate is not here to testify, and there is an absence of evidence as to the care exercised by him in attempting to cross

defendant's track, but it cannot be presumed that deceased recklessly or carelessly imperiled his own life, or entered upon the track knowing of the train's approach. If the presumption of negligence arises from the mere fact that deceased was killed on the track at a place where he had a right to be, it must necessarily defeat recovery in all such cases, unless it appear that those in charge of the train, after discovering the dangerous condition of the parties injured, could, by the exercise of ordinary care, have avoided inflicting the injury." L. C. & L. R. Co. v. Goetz, 79 Ky. 447, 3 R. 221, 42 Am. Rep. 227; L. & N. R. R. Co. v. Taylor (Ky.) 104 S. W. 776, 31 R. 1142.

There is also a plain elementary principle of negligence law that to constitute actionable negligence there must be a concurrence of two things: First, negligence; and, second, injury resulting as a proximate cause of it. It matters not how negligent a person may be, his negligence, unless the injuries complained of were the proximate result of it, will not authorize a recovery in damages. C., N. O. & T. P. Ry. Co. v. Zackary (Ky.) 106 S. W. 842; Hummer v. L. & N. R. Co. (Ky.) 108 S. W. 885, 32 R. 1315. Applying to the facts of this case the rules of law that the traveler must exercise ordinary care for his own safety, and that there must·be some causal connection between the negligent act and the injury complained of before there can be a recovery, let us see what care Conway exercised, and if there is any evidence conducing to show that the injuries received by him were the proximate result of the failure on the part of the persons in charge of the train to give the crossing signals. Conway had frequently ridden the horse along this road when trains were passing, but never before had he become frightened. He does not pre-

tend to say that if the signal had been given he would not have ridden the horse as he was riding him, or that he would have remained at the creek, or that he would have ridden his horse away from the railroad, or that he would have taken any precautions whatever for his safety.  The evidence leaves no room to doubt that Conway did not suspect that his horse would become frightened at the train, and consequently he did not feel it incumbent or necessary to take any care to look out for trains.  For some unexplained reason the passing train, although operated in the usual way and making only the customary noises, frightened the horse, but this would as surely have happened if the crossing signals had been given.  It was not the failure to give the crossing signals that caused the horse to run off, or that resulted in the injury to Conway. Both of these things were due to the fact that the horse became frightened at the passing train.  To hold that the failure to give the crossing signals was the proximate cause of the accident, we would be obliged to infer, without any evidence whatever to support the inference, that if the signals had been given, Conway would have remained at the creek, or have avoided the road he was accustomed to go over, or have taken other precautions to prevent his horse from becoming frightened. These inferences, in addition to having no foundation in fact would be contradicted by the reasonable inferences that may be drawn from the evidence of Conway tending to show that, if he had known that the train was coming, he would have ridden his horse along the road as he had done many times before.  If there was any evidence even tending to show that Conway would have remained at the creek, or not have ridden his horse along the parallel road, or that he would have taken any precautions for

his safety, if the train had sounded the crossing signals, a very different question would be presented. The mere circumstance that the collision occurred at the crossing did not in any wise strengthen Conway's case. If the collision had occurred 35 feet from the crossing, or if the horse in his fright had run into a tree or fence or over an embankment, the case for Conway would be the same, because if the negligence of the company in failing to whistle caused the horse to become frightened and run away, it was not important or material how or in what manner Conway was injured by the horse. So that, looking at the question from any standpoint, it was necessary to connect the fright of the horse with the failure to whistle, and it is on this vital point that the case of Conway fails.

Counsel for appellant relies in his brief on a number of cases to sustain his contention that the failure to give the crossing signals was negligence and the proximate cause of the injury to his client; but, in our opinion the cases cited do not sustain the position taken. In Rupard v. C. & O. Ry. Co., 88 Ky. 280, 11 S. W. 70, 10 R. 1023, 7 L. R. A. 316, Mrs. Rupard was injured while riding horseback on the public road at a point where the railroad crosses the public road on an overhead trestle. The negligence complained of consisted in the failure of the persons in charge of the train to give any signals of its approach to this crossing; it being shown that if the signals had been given Mrs. Rupard "could and would, have kept at a safe distance from the crossing until the train passed it, whereby the injury would have been avoided." The court said: "Injury may occur to the traveler at the crossing in two ways, namely: By a collision with him, or by scaring the horse that

he is riding or driving, whereby he is injured. It is the duty of the railroad company in approaching a crossing, if danger to the traveler in either of the ways above mentioned may be reasonably apprehended, to give timely notice of its approach, in order that the traveler may not only be warned not to come in collision with the train, but secure himself from injury by his frightened horse.'' In this case, however, the court held that a peremptory instruction in favor of the railroad company was proper, because of the contributory negligence of Mrs. Rupard. In Chesapeake & Nashville Ry. Co. v. Ogles (Ky.) 73 S. W. 751, 24 R. 2160, Lulu Ogles was injured by her horse becoming frightened at the passing of a train on a trestle that crossed the public road upon which she was traveling. The evidence shows: ''That when appellee and her husband had arrived at within about 60 yards of the crossing, they stopped their horse, which was a young and inexperienced animal, and listened for a signal, or any noise that would indicate the approach of a train. But, hearing none, they sent their brother-in-law, who was riding with them, forward to the crossing to see if he could discover any evidence of the approach of a train. He informed them that the way was clear. They then proceeded on their way, and while passing under the crossing appellant's train of cars came suddenly from the south, running rapidly over the crossing, making a loud noise, which so frightened their horse that he began to tremble, jump, and make efforts to escape.'' In Illinois Central R. Co. v. Mizell, 100 Ky. 235, 38 S. W. 5, 18 R. 788, Mrs. Mizell, in approaching a railroad at a point where it was crossed at grade by the public road, on which she was riding, listened for the signal of the approach of a train, but, not hearing

vol. 135—16

any, proceeded towards the crossing, when her horse became frightened at a train that suddenly came in view, causing her to sustain injuries for which she sought to recover damages. Putting the decision of the case upon the ground that the failure to give the signals induced Mrs. Mizell to approach the track, the court said: "The principal ground relied upon by the appellant is that the alleged negligence in failure to blow the whistle was not the proximate cause of the injury; but if, by reason of that failure, the appellee went upon the track and her horse was there frightened by the approaching train, the jury, if they believed appellee's witnesses, had evidence from which they were entitled to find that the negligence was the proximate cause of the injury, and that the damage followed as a continuous and natural sequence from the negligent act, and was a result which might have been foreseen and expected as the result of the conduct complained of, for it was to be expected that passengers on horseback might be traveling along the highway." These cases merely support the rule we have stated that, when the injury is traceable directly to the negligent act, there may be a recovery, but they do not hold that there can be a recovery when there is no proven or presumptive connection between the negligence and the injury.

In our opinion the evidence for Conway was not sufficient to take the case to the jury. Wherefore the judgment is affirmed.

Hobson and Nunn, JJ., dissent.

DISSENTING OPINION BY JUDGE HOBSON.

Section 786, Ky. St. (Russell's St. Sec. 5335), requires railroad companies to provide each locomotive engine passing upon its road with a bell of ordinary size and a steam whistle, and requires that the bell

shall be rung, or the whistle sounded outside of in-
corporated cities and towns at a distance of at least
50 rods from the place where the roads cross upon
the same level any highway, and that the bell shall be
rung or whistle sounded continuously or alternately
until the engine has reached the highway crossing.
Sec. 466 Ky. St. (Russell's St. Sec. 3), also provides
that the person injured by the violation of any statute
may recover from the offender such damages as he
may sustain by reason of its violation, although a
penalty is therein imposed.  Accordingly it has been
steadily held by this court that where the prop-
er signals are not given of the approach of a train to
a public crossing as required by the statute, and by
reason thereof a traveler on the highway is hurt, he
may recover damages.  South Conway, a boy 11 years
of age, took his father's horse to water, and while
riding back from the creek along the county highway
approaching the crossing, and on his way to the cross-
ing was hurt in this way:  The road ran, as it ap-
proached the crossing, for a few yards parallel with
the railroad. A freight train, running rapidly, came
up behind the horse, giving no signal of its approach
to the crossing, and caused the horse to run away,
thus injuring the child very seriously.  The county
road at this point ran along a fill just outside of the
railroad ties. No signals of the approach of the train
being given, the child was caught in a trap with the
creek on one side of him and the rapidly approaching
railroad train coming up behind his horse on the oth-
er side, where the ties of the railroad ran out near-
ly to the line of the county road.  That the horse
should become frightened when a rapidly running
train suddenly dashed upon it from behind without
warning was to be expected. The danger to the travel-

er at this narrow point was just as great for all practical purposes as far as the management of the horse went as it would have been if he was at the crossing. The purpose of requiring signals to be given of the approach of the train 50 rods from the crossing is that the traveler may know of the approach of the train, and have an opportunity to take steps for his own protection. When there was a failure of the train in question to give any notice of its approach to the crossing, the child was caught in a trap, and the first he knew of the approach of the train was from the fright of his horse. It is entirely immaterial whether he was at the crossing or 73 yards from it. He was on the county highway. He was riding to the crossing, and as a traveler on the highway, was entitled to notice of the approach of the train, as required by the statute. The fact that the county road for a short distance ran parallel with the railroad in no way lessened his rights. On the contrary, the danger of the situation required a greater degree of care on the part of those operating the train. The opinion seems to be based upon the idea that the child does not testify what he would have done if the proper signals of the approach of the train had been given. If he had undertaken to testify on this subject, the court would manifestly have excluded the evidence. He can tell what he did, but what he would have done under other conditions he cannot testify to; for he cannot be allowed after he is hurt to tell what was in his mind or what he would have done if something had happened that did not happen. He can testify to all that he did, and what he would have done if the signals had been given that were not given must be determined by the jury under the evidence and all the circumstances. The opinion intimates broadly

that, if the child had said that he would have waited at the creek if signals had been given of the approach of the train, then a peremptory instruction should not have been given. It also intimates broadly that, if he had testified that he would have protected himself in some other way the peremptory instruction should not have been given. What he may now say he would have done if the signals had been given might be entirely different from what he would, in fact, have done in the emergency in which he was placed. The question he may testify to is what he could have done. He was entitled by law to the signals of the approach of the train. When they were not given, he was deprived of an opportunity to secure himself. If he could by ordinary diligence have protected himself from danger if the signals had been given, then it should be presumed that he would have exercised ordinary care for a child of his age under the circumstances. It is manifest from the proof that, if the child had known that the train was coming a minute before his horse took fright, he could have turned him around and ridden back down to the creek, even if it be conceded that he had left the creek before the train had reached the whistling board. When signals are not given of the approach of the train, and the traveler on the highway is injured because he is not aware of the approach of the train, and is thus caught at a disadvantage, it must be a question for the jury whether or not his injury is primarily due to the failure of those in charge of the train to give the signals of its approach. In Ill. Cent. R. R. Co. v. Mizell, 100 Ky. 235, 38 S. W. 5, 18 Ky. Law Rep. 738, no signals of the approach of a train to a crossing were given, and the plaintiff's horse ran off with her,

throwing her and injuring her seriously. Sustaining a recovery, this court said: "The principal ground relied on by appellant is that the alleged negligence in failure to blow the whistle was not the proximate cause of the injury; but, if by reason of that failure the appellee went upon the track and her horse was there frightened by the approaching train, the jury, if they believe appellees' witnesses, had evidence from which they were entitled to find that the negligence was the proximate cause of the injury, and that the damage followed as a continuous and natural sequence from the negligent act, and was a result which might have been foreseen and expected as the result of the conduct complained of, for it was to be expected that passengers on horse back might be traveling along the highway."

The same rule is laid down in Rupard. v. C. & O. R. R. Co., 88 Ky. 280, 11 S. W. 70, 10 Ky. Law Rep. 1023, 7 L. R. A. 316, although in that case a peremptory instruction was given because Mrs. Rupard was negligent in not looking out for the train. But in this case the child was only 11 years old. He was not upon the crossing, but simply approaching it, and if it is conceded, as in the Rupard Case, that an action may be maintained for the negligence of the railroad company unless there was contributory negligence on the part of the plaintiff, then manifestly the case should have gone to the jury under a long line of opinions by this court. See L. & N. R. R. Co. v. Clark, 105 Ky. 571, 49 S. W. 323, 20 Ky. Law Rep. 1375; L.&N.R. R. Co. v. Ueltschi, 97 S. W. 14, 29 Ky. Law Rep. 1136; C. & O. R. R. Co. v. Vaughn, 97 S. W. 774, 30 Ky. Law Rep. 215; L. & N. R. R. Co. v. Lucas, 99 S. W. 959, 30 Ky. Law Rep. 359; C., N. O. & T. P. Ry. Co. v. Champ,

104 S. W. 988, 31 Ky. Law Rep. 1054; L. & N. R. R. Co. v. Taylor, 104 S. W. 776, 31 Ky. Law Rep. 1142.

This case is practically on all fours with C. & N. R. R. Co. v. Ogles, 73 S. W. 751, 24 Ky. Law Rep. 2160, except that there were in that case facts showing that the plaintiff was not guilty of contributory negligence. But, as the child here was only 11 years old, he could only be required to use such care as might be reasonably expected from a child of his age; and, if the railroad company was negligent, it cannot shield itself from the consequences of its own negligence because the child did not take those precautions that might reasonably be expected of an adult. In so far as the opinion is predicated in any degree upon contributory negligence on the part of the child, it is in conflict with the opinions of this court above cited; and, in so far as it is based on the ground that the child does not testify what he would have done if the signals had been given, it disregards the settled rules of evidence. In L. & N. R. R. Co. v. McNary's Adm'r, 128 Ky. 408, 108 S. W. 898, 32 Ky. Law Rep. 1272, 17 L. R. A. (N. S.) 224, where there was testimony by bystanders as to what occurred when the woman was struck showing just how the accident occurred, and it was insisted that a peremptory instruction should have been given the jury to find for the defendant, this court said: "The woman manifestly could have seen the train if she had looked in that direction just before she went on the track, but she had a right to assume that notice of the approach of a train would be given and where proper signals are not given, this court has held in a number of cases that the question whether the traveler used ordinary care is for the jury—(citing authorities). To hold as a matter of law that the footman is guilty of contributory negligence

barring a recovery for his injury whenever he goes
upon a railroad track, without stopping, looking, or
listening would be practically to exempt railroads
from all responsibility in cases of this sort." The rule,
stop, look and listen is not applied.   There is nothing
to show negligence on the part of the child except that
he was riding along the road and did not look behind
him.   He had not reached the crossing.   If his horse
was gentle and did not usually take fright from the
cars, this was at least not a reason for requiring un-
usual precautions on his part.   If his horse had, when
frightened, run back and not forward, to the crossing,
he would have the same right of action if hurt as he
now has.   The gist of his action is that the signals to
which he was entitled were not given, and it is not
material whether his horse was thus frightened at
the crossing or a few yards from it.   He cannot re-
cover unless he used ordinary care, but what would be
ordinary care for a child 11 years old might not be
ordinary care for an adult.   In City of Owensboro v.
York's Adm'r, 117 Ky. 300, 77 S. W. 1130, 25 Ky. Law
Rep. 1397, this court quoted with approval from 7
Am. & Eng. Enc. of Law, 408; "As the standard of
care thus varies with the age, capacity, and exper-
ence of the child, it is usually, if not always, where
the child is not wholly irresponsible, a question of fact
for the jury whether the child exercised the ordinary
care and prudence of a child similarly situated; and,
if such care was exercised, a recovery can be had for
an injury negligently inflicted, no matter how far the
care used by the child falls short of the standard
which the law erects for determining what is ordinary
care in a person of full age and capacity."   The same
rule is thus stated in 29 Cyc. 642: "It is also a ques-
tion for the jury to determine under all the facts

whether a child exercised such care and discretion as might reasonably be expected of one of his age, capacity, and experience situated as he was." In United States Natural Gas Co. v. Talmage Hicks (decided May 19, 1909) 119 S. W. 166, this court said: "The general rule is that, when a child reaches the age of 14 years, the legal presumption is that it knows right from wrong, and it is responsible for its acts. Between that age and seven years the legal presumption is with the child, and, to make it responsible, it must be shown by the testimony that it had sufficient intelligence and discretion to realize and to know what would be the result of its acts. Hence it is always proper to submit the question of contributory negligence in such cases to the jury." See also, 1 Shearman and Redfield on Negligence, Sec. 73. When the plaintiff is placed in a position of peril by the defendant's negligence, and thus suffers an injury, the rule is that he may recover unless at the time he failed to exercise ordinary care for his own safety, and but for this would not have been injured. Here by the defendant's negligence the plaintiff was placed in a position of peril and was injured: and, under the rule heretofore laid down by this court, he may recover unless he failed then to exercise ordinary care for his own safety. What he would have done if the defendant had not been negligent is only material on the question of proximate cause. Western Union Telegraph Co. v. Caldwell, 126 Ky. 42, 102 S. W. 840, 31 Ky. Law Rep. 497, 12 L. R. A. (N. S.) 748; Sutton v. Western Union Tel. Co., 110 S. W. 874, 33 Ky. Law Rep. 577.

The rule in this state is that, if there is any evidence, the question is for the jury. The scintilla rule has been so often upheld that the question is no long-

er open.  The proof is abundant that no signals of the approach of the train were given, and that the child was thus caught in a trap.  By reason of the want of the signals he had no opportunity to protect himself as he would have had if the signals had been given.  The facts show that, if proper signals were given, a person of ordinary care could have protected himself. It cannot be presumed that the child would not have used ordinary care for one of his age; and, it being conceded that the defendant was negligent in the discharge of a legal duty required of it for his protection as a traveler on the highway, it was a question for the jury whether this negligence was the proximate cause of his injury, and whether he exercised such care as may be reasonably expected of a child of his age under the circumstances.  The opinion of the court refers to L. & N. R. R. Co. v. Smith, 107 Ky. 178, 53 S. W. 269, 21 Ky. Law Rep. 848; C., N. O. & T. P. R. R. Co. v. Bagby, 29 S. W. 320, 16 Ky. Law Rep. 533; L. & N. R. R. Co. v. Bowen, 39 S. W. 31, 18 Ky. Law Rep. 1099; C. & O. R. R. Co. v. Pace, 106 S. W. 1176, 32 Ky. Law Rep. 806, and L. & N. R. R. Co. v. McCandless, 123 Ky. 121, 93 S. W. 1041, 29 Ky. Law Rep. 563, but these were all cases where crossing signals were not involved.  The gist of this case is that the plaintiff was entitled to the crossing signals, and these were not given.  To say that the child cannot recover because on the facts shown he was as a matter of law guilty of contributory negligence is to adopt in this state the rule, stop, look and listen before the traveler reaches the crossing and to make it apply to a child eleven years old. Under the opinion, the rule would apply equally if the child had been on the crossing.  If not, why not?  For he was

equally entitled to the crossing signals as he approached the crossing as when he was on it.

I therefore dissent from the opinion.

NUNN, C. J., concurs in this dissent.