# Vogt's Administrator v. Southern Railway in Kentucky.

(Decided December 3, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

1. Railroads—Operation—Accidents at Crossings—Frightening Animals.—The usual and proper sounding of whistles and other signals, or the proper escape of steam from its engines is not negligence and does not make a railroad company responsible for injuries resulting from horses becoming frightened thereat; but where the railroad employes unnecessarily, negligently or wantonly blow the whistle or allow steam to escape, causing horses to become frightened, the company is responsible for the resulting injury.

2. Negligence—Proximate Cause of Injury.—Boys driving a pony hitched to a cart on approaching a railroad grade crossing were informed that a train was coming, and thereupon stopped about thirty feet from the track to await the passing of the train. The pony had been owned by the father of the boy who was driving, about six years. It was believed to be gentle, and had never theretofore become frightened at trains or automobiles. When the locomotive and about half of the train had passed over the crossing, the pony became frightened and leaped toward and into the train, causing the death of one of the boys. Held, that the excessive speed of the train, and the failure to give the statutory warnings of its approach, conceding them proven, were not the proximate cause of the injury.

N. E. VOGT and EDWARDS, OGDEN & PEAK for appellant.

EDWARD P. HUMPHREY for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

On March 27, 1913, Sherman Edward Vogt, a boy of about 12 years of age, together with his younger brother and another young boy, were driving a pony hitched to a cart, on their way home from school, at Buechel, Jefferson county, Kentucky. They were on the Bardstown road, approaching the place where that road and the

line of the Southern Railway cross at grade, at Buechel Station, a small settlement of some half a dozen houses, several miles from Louisville. The pony had been owned by the father of the Vogt boys for more than six years, and was gentle, having never become frightened at trains or automobiles.

As the boys approached the grade crossing, they were informed by another boy who was riding a bicycle, that a train was coming. The boy on the bicycle dismounted, and those driving the pony stopped, about thirty feet from the track, to await the passing of the train.

After the locomotive and perhaps half of the train had passed over the crossing, the pony became frightened, and leaped toward and into the train, causing the death of Sherman Edward Vogt.

His administrator instituted this action in the Jefferson Circuit Court to recover damages for his death; and, upon a trial, the court, at the close of the evidence for the plaintiff, directed a verdict for the defendant. Plaintiff appeals.

There were three alleged grounds of negligence charged in the petition: (1) excessive speed of the train, (2) unusual and unnecessary sounding of the whistle and emission of steam in passing over the crossing, and (3) failure to give the statutory warnings of the approach of the train.

It appears, from the statement made to the jury in directing a verdict for the defendant, that the trial court was of the opinion that the speed of the train and the failure to give the statutory warning of its approach, were neither the proximate cause of the death of plaintiff's intestate; and that there was no evidence in support of the second ground of negligence charged.

1.    It is elementary in the law of negligence that to render negligence actionable, the negligent act or omission complained of must have been the proximate cause of the injury to recover damages for which the action is prosecuted. The trial court was clearly right in holding that the speed of the train was not actionable negligence in this case, assuming that it was proven to be excessive, for it cannot be said that had the speed of the train been slower the injury complained of would not have happened. To so hold, would be to indulge an inference not founded upon proven facts; or, to state it more accurately, to hold the speed of the train to have been the proximate cause of the injury would require the assump-

tion that had the speed of the train been less, the pony would not have become frightened, which is a matter not susceptible of proof.

2.   Nor was the failure to give the statutory warning of the train's approach to the crossing the proximate cause of the death of plaintiff's intestate.   The pony was believed to be gentle; it had never before become frightened at trains or automobiles.   The boy knew that the train was approaching, but did not suspect that the pony would become frightened at it, and, therefore, made no effort to get further back from the railroad track or to alight from the buggy.   There was, therefore, no causal connection between the alleged failure to give the statutory warnings of the train's approach and the death of the Vogt boy.

In the case of Conway v. L. & N., 135 Ky., 229, a case in all material respects identical with this, the boy did not know of the approach of the train, and it was charged that there was a failure to give the statutory warning of its approach.   In that case the court held that the failure to give the statutory warning was not the proximate cause of the plaintiff's injuries, although he did not know of the train's approach.   The court said:

"Conway had frequently ridden the horse along this road when trains were passing, but never before had he become frightened.   He does not pretend to say that if the signal had been given he would not have ridden the horse as he was riding him, or that he would have remained at the creek, or that he would have ridden the horse away from the railroad, or that he would have taken any precautions whatever for his safety.   *   *   *   To hold that the failure to give the crossing signals was the proximate cause of the accident, we would be obliged to infer, without any evidence whatever to support the inference, that, if the signals had been given, Conway would have remained at the creek, or have avoided the road he was accustomed to go over, or have taken other precautions to prevent his horse from becoming frightened.   These inferences, in addition to having no foundation in fact, would be contradicted by the reasonable inferences that may be drawn from the evidence of Conway tending to show that if he had known that the train was coming, he would have ridden his horse along the road as he had done many times before."

The trial court was right in holding that the alleged failure to give the statutory warnings of the train's ap-

proach was not the proximate cause of the death of plaintiff's intestate.

3. There is some testimony in the record to the effect that steam was being emitted from the locomotive as it passed over the crossing, and that the whistle was sounded at or about the time the locomotive passed over the crossing, but neither of these constitutes negligence.

"The usual and proper sounding of whistles or other signals, or the proper escape of steam from its engines, is not negligence and does not make the railroad company responsible for injuries caused by horses becoming frightened thereat. But where the employes unnecessarily, negligently or wantonly blow the whistle or allow the steam to escape, thereby causing horses to become frightened, the railroad company is responsible for the resulting injury." 33 Cyc, 937. See also L. & N. v. Sights, 121 Ky., 203, 89 S. W., 132, 28 R., 186.

The evidence shows no unusual whistling or emission of steam on the crossing.

Judgment affirmed.