# Louisville & Nashville Railroad Company v. Stanaford.

(Decided November 29, 1916.)

## Appeal from Whitley Circuit Court.

1. Railroads—Liability for Injury—Frightening Horse.—A railroad operating a line on its own right-of-way is under no duty to discover the peril of a traveler from the frightening of a horse on the adjoining highway from twenty to seventy-five feet distant, even though located in an incorporated town. Its sole duty is to use ordinary care for the safety of the traveler after his peril is discovered.

2. Railroads—Liability for Injury—Frightening Horse—Evidence.— In an action for injuries sustained by plaintiff when the horse which she was driving became frightened at a train, evidence that the horse and buggy were in plain view of the engineer and he was looking in their direction is competent for the purpose of showing whether the engineer discovered her peril.

3. Railroads—Action for Injuries—Sufficiency of Evidence.—In an action for injuries sustained by plaintiff when the horse which she was driving became frightened at a train, evidence considered and held to make a question for the jury as to whether the engineer discovered plaintiff's peril and thereafter failed to use ordinary care for her safety.

HIRAM H. TYE and BENJAMIN D. WARFIELD for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

This is a personal injury action, in which plaintiff, Roxie Stanaford, recovered of the defendant, Louisville & Nashville Railroad Company, a verdict and judgment for $3,000.00. The railroad company appeals.

The company's line runs through the town of Williamsburg between what is known as the "Sutton Crossing" and the "Underground Crossing." One of the highways of the town runs practically parallel with the company's track for a distance of about a quarter of a mile. The distance of the highway from the company's track varies from twenty to seventy-five feet. At a point about midway between the "Sutton Crossing" and the "Underground Crossing" are three one-story houses, which are located between the highway and the track. Near the "Sutton Crossing" is a deep cut. Emerging from the cut the track is on a fill, while the

highway runs through what is called a sag, and for a considerable distance is lower than the railroad track.

On the day of the accident plaintiff and her brother were driving along the highway. One of the company's trains going south gave the crossing signal just before reaching the "Sutton Crossing." The horse which plaintiff and her brother were driving became frightened and started down the highway just in front of the engine. The highway was located on the side next to the engineer. A part of the time the horse was ahead of the train and at other times the train was ahead of the horse. According to the evidence for plaintiff, plaintiff's brother, after going some distance, succeeded in getting the horse under control and drew him to a slow lope. About that time the engineer gave two sharp whistles and permitted the steam to pop off under the engine. Thereupon the horse took fright a second time and ran rapidly down the highway to the "Underground Crossing," where the highway makes a sharp turn. In making this turn the buggy was upset and plaintiff thrown to the ground and severely injured. One witness for plaintiff claims that when he saw the horse was frightened he stepped upon the track and undertook to flag down the train, but received no response to his signal. Another witness says that when the horse took fright the second time the engineer was looking in the direction of the horse and buggy. Another witness says that the engineer was leaning out of his cab laughing. A third witness says that the engineer was sticking his waist out and looking at the horse and buggy. Others say that the horse and buggy were in plain view of the engineer, except for a short distance where two or three houses were between the track and the highway.

The engineer says that he never saw the horse and buggy, but had his attention directed to the block signals. He also says that after giving the signals for the "Sutton Crossing" he gave no further signals until after he passed the "Underground Crossing." The fireman testifies to the same effect.

In its instructions the court told the jury in substance that if they believed from the evidence that the defendant's engineer, after discovering plaintiff's presence in the buggy on the highway, saw, or by the use of ordinary care could have seen, that the horse was frightened, and that the circumstances were such as to lead an ordinarily prudent person, situated as the engi-

neer was, to believe that the horse would surge or run and injure plaintiff, and he thereafter failed to use ordinary care to stop or control the train and prevent unnecessary loud noises, etc., they should find for plaintiff. This instruction is assailed on the ground that it imposed on defendant's engineer the duty to discover plaintiff's peril. It is defended by plaintiff on the ground that it conforms to the ruling of this court in the cases of L. & N. R. R. Co. v. Allen, 153 Ky. 252, and Kentucky Traction & Terminal Company v. Humphrey, 168 Ky. 611. It does appear that the instruction was patterned after that given in the Allen case, *supra*, but the rule there applied has no application to the facts of this case. In the Allen case the horse and train were both going towards a public crossing. The accident was the result of a collision at the crossing and the circumstances were such when the engineer saw the horse running towards the crossing as to lead an ordinarily prudent person to believe that a collision between the horse and train would take place. In the present case plaintiff was not injured while the horse was going over a public crossing, nor was there any collision between the horse and the train.

Nor do we see any ground for applying the rule laid down in the Humphrey case, *supra*. That was a case of an interurban or an electric car running along one of the principal thoroughfares of the city of Frankfort. Here the railroad was on its own right-of-way and its tracks were from twenty to seventy-five feet distant from the highway in question. Under the circumstances, therefore, we conclude that defendant's engineer was under no duty to discover plaintiff's peril, but that his sole duty was to use ordinary care, with all reasonable means at his command, to prevent injury to plaintiff after her peril was discovered. Millers Creek Railroad Company v. Blevins, 159 Ky. 599; L. & N. R. R. Co. v. Harrod's Admx., 155 Ky. 155; C. & O. Ry. Co. v. Lang's Admr., 135 Ky. 76, 121 S. W. 993; I. C. R. R. Co. v. Martin, 110 S. W. 815; L. & N. R. R. Co. v. McCandless, 123 Ky. 121.

It therefore follows that the instruction complained of was erroneous.

Complaint is made of the admission of testimony to the effect that plaintiff's horse and buggy were in plain view of the engineer and that he was looking at them.

Since there is no better way of showing that the engineer discovered plaintiff's peril than to establish the fact that the engineer's view of the horse and buggy was unobstructed, and that he was looking in the direction of the horse and buggy, we conclude that this evidence was properly admitted. We also conclude that it was sufficient to take the case to the jury.

It is also insisted that the case should not have gone to the jury, because of plaintiff's failure to prove a want of ordinary care on the part of the engineer to avoid the injury after plaintiff's peril was discovered. In this connection it is argued that plaintiff did not show that the escaping steam and the additional whistles blown when the horse took fright the second time were unnecessary. We fail, however, to find in the record any emergency calling for the giving of signals at that time, or making it necessary for the steam to escape. It does not appear that either the statute or the rules of the company require the giving of signals for the underground crossing. Even where required by the statute, it is the rule that if the employes of the railroad company in fact see the danger in which the traveler is placed, then they should, if necessary, in the exercise of ordinary care, cease blowing the whistle as a signal for the crossing, and resort to the bell, as the statute provides either mode of giving a warning for the crossing. Millers Creek Railroad Company v. Blevins, *supra;* I. C. R. R. Co. v. Martin, *supra;* L. & N. R. R. Co. v. McCandless, supra.

Considering the case in the light of the circumstances under which the signals were given and the steam permitted to escape, we think it was for the jury to say whether or not the engineer, after discovering plaintiff's peril, failed to exercise ordinary care for her safety.

Judgment reversed and cause remanded for a new trial consistent with this opinion.