## Louisville & Nashville Railroad Company v. Allen.

(Decided March 28, 1913.)

### Appeal from Muhlenberg Circuit Court.

1. Railroads—Personal Injury—Travel on a Parallel Road—Accident at Crossing—Peremptory Instruction.—In an action for personal injuries by a traveler whose horse took fright on a highway parallel with a railroad and ran off and collided with a train at a crossing, evidence examined and held sufficient to take the case to the jury.

2. Railroads—Personal Injury—Instruction—Assumption of Fact.— An instruction does not assume a fact which the jury is specifically called on to determine.

3. Instructions—Ordinary Care.—While trial courts should adhere to the definitions of ordinary care adopted and recognized by this court, it was not prejudicial error to give an instruction defining ordinary care as "such care as an ordinarily prudent person would usually exercise under similar circumstances in matters involving his own interest."

4. Instructions.—It i snot error to refuse an offered instruction where the instructions given fully present the question.

5. Instructions—Contributory Negligence.—In an action for damages for personal injury, evidence examined, and held that the refusal of an instruction on contributory negligence was not prejudicial error.

6.    Railroads—Personal Injury—Action for Damages—Verdict—Exces-
       sive.—In an action for damages for personal injuries, evidence ex-
       amined, and a verdict of $5,500 held not excessive.

BROWDER & BROWDER, BENJAMIN D. WARFIELD and
CHARLES H. MOORMAN for appellant.

WALKER WILKINS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

In this action for damages for personal injuries, plaintiff, Percy H. Allen, recovered a judgment against the defendant, Louisville & Nashville Railroad Company, in the sum of $5,500. The railroad company appeals.

According to the evidence for plaintiff, he was riding a horse along a country road leading from Rochester, in Butler County, to the town of Drakesboro, in Muhlenberg County, Kentucky. This road crosses the railroad track several hundred feet south of the Drakesboro depot, and from that point it runs along the west side and parallel with the railroad for a distance of several hundred yards. The road is only ten or twelve feet from the tracks. About 300 yards north of the crossing is a cut. On the occasion in question plaintiff had crossed the railroad tracks at the crossing. When he reached a point between 600 and 700 feet from the crossing, defendant's southbound passenger train ran out of the cut. The train was within 800 or 900 feet from the crossing. Plaintiff's horse became frightened and unmanageable. The horse first ran towards the train. He then turned and ran towards the track, but plaintiff pulled him away from the track. The horse was rearing and plunging. He then started towards the crossing. When he reached a point about ten feet beyond the crossing, the engine struck the horse and rider. Plaintiff was thrown about 35 feet south of the place where he was struck by the engine. The horse was carried several yards beyond. Plaintiff says that when the train came in sight he saw the engineer in his cab looking towards him. The engineer was also looking at him when the horse turned and ran down the road. The train was running 25 or 30 miles an hour, and had increased its speed when the engine struck the horse. Mrs. Hardison, a witness for plaintiff, saw the horse when it became scared and frightened by the train. She says the horse then turned and ran down the railroad. When

the horse became scared the train checked its speed a little. The train then increased its speed and ran about like it usually ran. When it reached the crossing it was going at its usual speed at that point. Cleve Gibson testified that when the train reached the crossing it was going at the rate of 20, 25 or 30 miles an hour. Harley Brown testified that he saw the horse when it began to prance and dance. The train continued to come on. The horse then commenced to jump, and the train stopped or nearly stopped. Afterwards the horse turned and commenced running. The train then commenced to go faster. The horse beat the train to the crossing a little. At that time the train was going as hard as it could go.

For the defendant, Mrs. Spencer, who was within 150 feet of the railroad and saw the accident, testified that the train stopped right on the crossing. Thomas Martin, the engineer, testified that when he first saw plaintiff, he (Martin) was about 100 yards from the crossing. Seeing that the horse was coming towards the crossing, he shut off steam and applied the emergency brakes. When he stopped, the rear coach was on the crossing. When he saw plaintiff the train was going at the rate of 25 miles an hour. This witness also says that his view of plaintiff was obstructed by a curve and high cut. He never saw plaintiff until his horse was running towards the crossing. His train did not slow up and then increase its speed. The conductor in charge of the train was in the smoking car. He did not see any part of the accident. He says his attention was first attracted by the sudden and abrupt reduction of speed. The emergency brake was used. The rear coach was standing on the crossing when the train stopped. The train itself was about 300 feet long. By using all the means at hand, the train could have been stopped within 300 or 350 feet. The fireman testified that the engine was about 150 or 200 feet from the crossing when the emergency brakes were applied When the train stopped the rear coach was on the crossing. The engineer, in his opinion, made a good stop.

It is first insisted that the court erred in overruling defendant's motion for a peremptory instruction. In this connection it is insisted that the facts bring it within the rule laid down in Conway v. L. & N. R. R. Co., 135 Ky., 229. In that case the court held that even if it should be assumed that the engineer saw, or, in the exercise of reasonable care, could have seen, the fright of the horse,

there was absolutely no evidence from which it could be reasonably inferred that, by the exercise of ordinary care, the engine could have been stopped or the speed of the train slackened so as to avoid the collision after the fright of the horse was or could have been discovered. The facts here present an entirely different case. The road along which plaintiff was riding is only ten or twelve feet from the tracks. It runs along the railroad for a distance of several hundred feet. It was on the engineer's side of the engine. Plaintiff said the engineer was in his cab window and was looking towards him. After he came out of the cut there was nothing to obstruct his view. From that point it was 800 or 900 feet to the crossing. Plaintiff was between 600 and 700 feet from the crossing when his horse took fright. The road was so close to the railroad tracks that plaintiff and his horse were necessarily within the plain view of the engineer. Two witnesses say that the train slowed up when the horse began to rear and plunge. When the horse began to run the speed of the train was then increased. When the horse began to run the engineer was only about 300 feet distant. Plaintiff's witnesses say that the train was going as fast as it usually ran when the crossing was reached. The conductor says the train could have been stopped within 300 or 350 feet. The engineer said he discovered the running horse when about 300 feet distant from the crossing. The train was about 300 feet long. The rear coach stopped on the crossing. The engine, therefore, was not stopped until it was over 200 feet from the crossing. Notwithstanding the fact that the engineer says he discovered plaintiff when about 300 feet from the crossing, the fireman says the brakes were not applied until the train was 150 or 200 feet from the crossing. The engineer says that the train did not slow up. Two witnesses say that it did. In this respect he is contradicted. Under such circumstances, his statement cannot be accepted as conclusive. There was evidence tending to show that the engineer discovered plaintiff's presence on the highway when the engineer was much further from the crossing than 100 yards, and that by the use of ordinary care he could have seen that the horse was frightened. There was also evidence tending to show that the horse was going at a break-neck speed towards the crossing, where the road crossed the railroad tracks, and this circumstance was sufficient to lead an ordinarily prudent

person, situated as the engineer was, to believe that the horse would attempt to cross the track in front of the train, or would come in collision with the train. There being evidence to show that plaintiff's presence on the track was discovered when plaintiff wos 600 or 700 feet from the crossing, and that the horse was then rearing and plunging and running towards the crossing, and that the engineer could then, by the exercise of ordinary care, have discovered the fright of the horse, it was for the jury to say whether or not the engineer, after seeing plaintiff's peril, could, by the exercise of ordinary care, have stopped the train in time to avoid the injury to plaintiff.

The court instructed the jury as follows:

"1. The court instructs the jury that if they believe from the evidence that the defendant's engineer in charge of said engine after discovering the plaintiff's presence on the highway on the occasion in controversy, saw, or by the use of ordinary care could have seen, that his horse was frightened, and if the jury further believe from the evidence that the circumstance was such as to lead an ordinarily prudent person, situated as the engineer was, to believe that the horse would attempt to cross the track in front of the train or would come in collision with the train, and that the said engineer, after so seeing the plaintiff, failed to use ordinary care to stop the train or to prevent injury to the plaintiff, and that the plaintiff was injured as the direct and natural result of said failure on the part of said engineer, then and in that event the jury will find for the plaintiff. And unless the jury so believe as set out in this instruction, they will find for the defendant.

"2. Unless the jury believe from the evidence that the defendant's engineer saw the plaintiff in time to have avoided injury to him by using ordinary care and that the said engineer failed to use such care to prevent injury to the plaintiff, the jury will find for the defendant.

"3. If the jury find for the plaintiff, they will award him such a sum in damages as will fairly and reasonably compensate him for any expense of cure, not exceeding $200.00 therefor, and for any mental or physical suffering, if any of either, and for any permanent impairment of his power to earn money, if any, which the jury may believe from the evidence was caused by and which was the direct and natural result of the negligence, if any, as set out in Instruction No. 1, not exceeding $15,000.00.

"4.   Negligence, as used in the instructions, means the failure to use ordinary care, and ordinary care is such care as an ordinarily prudent person would usually exercise under similar circumstances in matters involving his own interest."

Instruction No. 1 is criticised because of the failure of the court to insert after the clause "after so seeing the plaintiff" the words "if he did see him." It is therefore argued that the instruction assumed that the engineer did see plaintiff, under the circumstances set out in the first part of the instruction. While the words referred to might with propriety have been inserted in the instruction, their omission was not error. The very question submitted in the first part of the instruction was whether or not the engineer did see plaintiff on the highway, and whether or not he saw, or by the exercise of ordinary care could have seen, that plaintiff's horse was frightened. An instruction does not assume a fact which the jury is specifically called on to determine.

Instruction No. 4 is criticized because ordinary care is defined as such care as an ordinarily prudent person would usually exercise under similar circumstances in matters involving his own interest. While it is much better for trial courts to adhere to the definitions of ordinary care adopted and approved by this court, we fail to see wherein the substantial rights of defendant were prejudiced by the use of the words "in matters involving his own interest."

It is insisted that the court erred in refusing to give the following instruction offered by defendant:

"The court instructs the jury that it was not the duty of the defendant's engineer on the occasion in controversy to keep a lookout on said dirt road adjacent to said railroad track, and defendant owed plaintiff no duty until plaintiff's peril or danger was discovered by defendant's said engineer."

It is argued that this instruction should have been given in order to bring clearly before the jury the fact that the engineer was not under the duty of keeping a lookout for plaintiff, who was on the adjacent road. This phase of the case, however, we think, was fully covered by Instruction No. 2 given by the trial court. In that instruction the court told the jury to find for the defendant unless they believed from the evidence that defendant's engineer saw the plaintiff in time to avoid an

injury to him, by using ordinary care, and that the engineer failed to use such care to prevent injury to the plaintiff. It is not error to refuse an offered instruction where the instructions given fully present the question.

Another error relied on by the defendant is the refusal of the trial court to give an instruction on contributory negligence. Counsel for defendant argue that it is for the jury to say, under all the facts and circumstances, whether or not plaintiff, in the exercise of ordinary care, should not have dismounted from the horse or ridden the horse away from the track. The uncontradicted evidence, however, leaves no doubt that at the time the train came out of the cut, when it was only about 100 yards distant from the plaintiff, plaintiff's horse became unmanageable and beyond his control. The horse continued to rear and plunge from the time he was first frightened by the train. After wheeling around, he dashed at a high rate of speed towards the crossing. To have jumped under these circumstances would have necessarily resulted in injury. There is not a single circumstance going to show that he could have ridden the horse in any other direction. There was nothing, therefore, that would justify the giving of an instruction on contributory negligence except the bare possibility that plaintiff might have dismounted from his horse or might have ridden him away from the track. Under such circumstances, the refusal of an instruction on contributory negligence was not prejudicial error.

The verdict is assailed on the ground that it is excessive. The evidence shows that plaintiff was thrown several feet and remained unconscious until the next day. He received several scalp wounds, and was very nervous as a result of the shock. The hearing in his left ear was destroyed. He lost control over his kidneys. The condition of his kidneys may improve, but the condition of his ear is permanent. He was confined to his bed for three weeks and to his room for five weeks. He suffered severely from his injuries. Under these circumstances, we cannot say that the verdict is excessive.

Judgment affirmed.