## Harvey v. Illinois Central Railroad Company.

(Decided June 16, 1914.)

### Appeal from Muhlenberg Circuit Court.

1. Railroads—Highway Crossings—Obstruction of by Cars.—At points where railroads cross public highways the company cannot lawfully obstruct the highway by trains for a longer time than five minutes, as provided in Section 768 of the Kentucky Statutes. And when a train is under a duty to clear a road crossing, this means that it shall cut its cars in such a manner as that the entire right-of-way of the road shall be open for travel. If the right-of-way of the road is 16 feet wide, then 16 feet must be left unobstructed, and so if the right-of-way is 40 or 60 feet wide.

2. Railroads—Highway Crossings—Liability of Railroad Company for Obstructing with Trains.—Where a railroad company unlawfully obstructs a highway crossing with standing cars, it will be liable in damages to a highway traveler exercising care if the horse he is driving becomes frightened at the cars, thereby causing him to sustain injuries.

3. Railroads—Crossings—Negligence of Traveler.—Where a gentle horse, accustomed to trains, was being driven on a public road across tracks and became frightened at freight cars standing on the side of the crossing, the driver was not guilty of such contributory negligence as would defeat a recovery merely because he attempted to drive the mare between the cars knowing that they partially obstructed the roadway, or because he attempted to save his horse and buggy from being hit by a passing train.

ERNEST WOODWARD, M. L. HEAVRIN and A. D. KIRK for appellant.

TRABUE, DOOLAN & COX, TAYLOR & EAVES, BROWDER & BROWDER, C. L. SIVLEY and R. V. FLETCHER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In this action by the appellant, Harvey, who will be called the plaintiff, against the defendant company, to recover damages for personal injuries alleged to have been sustained by its negligence, the jury returned a verdict for the defendant, and the plaintiff appeals.

It appears that at a station called Nelson on its line of road, there are three tracks running north and south, all of them being crossed at right angles by a public road running east and west. The center track is the main track, the track on the east is a switch, and the track on the west a passing track.

On the afternoon of the day the plaintiff was injured, one of the defendant's freight trains pulled in on the passing track for the purpose of letting a fast, northbound passenger train pass on the main track. This freight train was cut in two at the road crossing for the purpose of leaving the public road open for travel. Shortly after the road crossing had been cleared, the plaintiff, in company with his wife, attempted to go across these tracks on the public road in a buggy from the east to the west side, when the horse he was driving, which the evidence shows to have been an ordinarily gentle horse, became frightened and stopped on the tracks.

The plaintiff, in describing what occurred, said:

"My horse began to sorter stop when he got on the main track; didn't want to go in between those cars, and I urged her on until she got her foot on the first rail of the switch, and she stopped and refused to go any further. About that time the passenger train came around this curve. It had almost gotten on a straight track, and me and my wife looked around and saw the train, and when we saw the passenger train approaching, I jumped out, and Mrs. Harvey jumped after me, and I drew the lines out of the harness as I went forward, and as we went on the crossing—it is a little down grade, and heavy down grade after you get on the edge—I kept pulling the mare until I got her half way across the switch, probably got to the middle of the track, and I couldn't pull her any farther. And as she began to back she cut the buggy north, and as she cut the buggy north the fast train struck one wheel of the buggy, I think it was the last coach of the passenger train that struck the wheel, and when it did that it jerked her down on her hunkers and the bridle fell off and I fell and struck on my back and turned over and rolled down the grade. When the train struck the buggy, it jerked the bridle off the horse, which caused me to fall. I was pulling the mare to keep her from backing into the train. I think the buggy wheels had passed the rails of the main track about 12 inches when the mare first stopped. The train, which was going at a high rate of speed, probably 60 miles an hour, did not whistle until it was within about 450 feet of the crossing, and the engine bell was not ringing. The end of one of the freight cars projected, including the draw-head, about three feet over the traveled part of the road; that is, that part of the road there that was generally used by wagons. If the mare had not backed, the buggy would not have been struck by the train. She backed into the train because she would not pass between the cars on account of them being so close. She didn't get scared at the passing train. There was a space of 15 or 20 feet between the cars where they had been cut in two at the crossing, and if the mare had not stopped, I could have driven across in safety, but she scared at the freight cars standing on the switch."

Other witnesses in behalf of the plaintiff gave substantially the same evidence.

On the other hand, the evidence for the defendant was to the effect that there was a space of about 40 feet between the cars at the road crossing, and that the ends of

the cars were several feet from each side of the traveled part of the roadway. It also shows that the statutory crossing signals, as well as the signal for the station, were sounded by the passenger train at the proper places and that the bell was continually ringing for the statutory distance and until the road crossing was passed.

With the evidence in this condition, the trial court instructed the jury, in substance, that if the persons in charge of the engine of the passenger train failed to give the statutory signal for the road crossing, and as a direct and natural result of this failure, the plaintiff's buggy was struck by the train and he was injured, they should find for him in damages; but refused to give an offered instruction on the subject of the obstruction of the public road by the freight cars of the freight train that had been cut in two at the crossing, although the· plaintiff in his petition charged that his injuries were brought about by the failure of the persons in charge of the engine of the passenger train to give the statutory signal, and also by the fact that the public road crossing was obstructed by the freight train in the manner heretofore stated.

That the trial court was of the opinion that the obstruction of the road crossing in the manner testified to by the plaintiff and his witnesses was not actionable negligence, is made plain by the fact that the jury were instructed "that they should not find for the plaintiff on account of the alleged negligence of the defendant in leaving the coal cars at the road crossing mentioned in the proof."

On this appeal the grounds assigned for reversal are: Alleged error of the court in failing to instruct the jury on the subject of the obstruction of the crossing, and on the duty of the defendant to keep a lookout and run its train at a reasonable rate of speed. It is also argued that the jury should have been peremptorily instructed that the statutory signals were not given by the passenger train.

For the defendant it is said that the court should have directed a verdict in its favor, upon the theory that if the crossing was partially obstructed, as claimed by plaintiff and his witnesses, the plaintiff knew of this obstruction before he attempted to cross the tracks, and therefore he should not have made an effort to cross without first notifying the trainmen that the crossing was partially obstructed and requesting them to move

the cars so that it would be entirely free; and that the injury to the plaintiff was the result of his efforts to force his horse over the crossing that he knew was partially obstructed.

It is provided in section 768 of the Kentucky Statutes that a railroad company "shall not obstruct any public highway or street, by cars or trains, for more than five minutes at any one time." This statute, which is merely supplementary of the common law forbidding the unreasonable obstruction of highways, is, we think, sufficient to impose upon a railroad company the duty of leaving unobstructed highway crossings for a longer time than five minutes by any one train. In other words, a train may block a crossing for a period of not longer than five minutes at any one time, but when the five minutes have expired, if the train is not ready to move, the crossing must be cleared by cutting the train in two or by some other method.

The train in question in this case evidently intended to remain on this passing track for a longer time than five minutes; consequently the trainmen cut the train in two for the purpose of leaving the highway crossing free for travel. But whether they left sufficient space between the cars to comply with the duty to clear the crossing, is involved in much doubt on account of the conflicting evidence on this subject. And this situation brings to mind the question as to how much space must be left between the cars, and whether the entire roadway should be left unobstructed.

Where railroads cross public highways as they do in innumerable places, these railroads and the public have each the right to use the crossing. The railroad trains have the right to cross the highway crossing, and the traveling public have the right, in the use of the highway, to cross the railroad track, and this right to use the highway by the public and the right to obstruct the crossing by passing and standing trains, must be exercised by both parties in such a manner as to subject the other party to as little inconvenience and trouble as is practicable under the circumstances.

Of course as trains must move on time and run in fixed places, it is necessary, under ordinary conditions, that they should have the right of way over other vehicles at highway crossings; but this right to priority of way must yield to the convenience of the highway travelers when, in the operation of a train, it is not necessary

that it should occupy the public crossing, or when it becomes its duty to clear the crossing.

These crossings are a part of the public road and the traveling public have the same right to the use of the entire roadway at points where it crosses a railroad as they do at other places on the road, except when it is lawfully blocked by the trains; and railroad companies have no more authority than other persons to place obstructions likely to frighten horses upon or near to a public road, unless the placing of the obstruction, whatever it consist of, is made necessary in the use or repair or construction of the road.

It is true that with few exceptions the public roads in this State are much wider than is necessary for the ordinary travel, and it is customary for the traveling public to use only a part of the roadway for travel, this part usually being on or near the center of the right of way of the road; but at the same time the public have the right to the use of the entire roadway whether it be narrow or wide, and persons driving in vehicles or riding on horseback are not required to confine themselves to that part of the road that is most traveled.

Keeping in mind the right of the traveling public to the use of the entire right of way of the road, we think that when a train is under a duty to clear a road crossing, this means that it shall cut its cars in such a manner as that the entire right of way of the road shall be open for travel, and that it is not sufficient to merely open a space between the cars over that part of the road that is most traveled or to open a space of say 15 or 16 feet and wide enough to permit two vehicles to pass between the cars at the same time. If the right of way of the road is 16 feet wide, then 16 feet must be left unobstructed by the train, and so if the right of way is 40 feet or 60 feet wide. Cars standing on opposite sides of a public road and near thereto are naturally calculated to cause many horses uneasiness, if not fright, and therefore cars so left standing should not be permitted to physically obstruct any part of the roadway. This being our view of the duty of railroad companies in respect to the clearing of highway crossings at which trains have been cut in two, the question, whether the defendant performed its duty in this respect, and this failure resulted in injury to plaintiff while he was exercising ordinary care for his own safety, should have been submitted to the jury under appropriate instructions: Missouri, K. &

T. Ry. Co. v. Jones, 13 Texas, Civ. App. 376, 35 S. W., 322; Pittsburgh, Cincinnati & St. Louis R. R. Co. v. Kitley, 118 Ind., 162; Peterson v. Chicago & West Michigan Ry. Co., 64 Mich., 621; Young v. Detroit, G. H. & M. Ry. Co., 56 Mich., 430; Elliott on Railroads, second edition, volume 3, section 1179e.

Under the evidence for the plaintiff, the defendant was guilty of negligence toward him in two respects: One, the failure of the passenger train to give the statutory crossing signals, and the other, the obstruction of the road crossing by the freight train; and he was entitled to recover damages if the jury believed from the evidence that the company was negligent in either of these particulars, and its negligence was the direct cause of the injuries complained of, unless the plaintiff, by his own negligence, forfeited his right to recover.

It is strongly urged in behalf of the defendant that the plaintiff was guilty of such contributory negligence as would defeat a recovery, although it may have been remiss in the performance of both of the duties we have mentioned. It insists that the evidence shows he knew how close the freight cars were standing together and that the crossing was partially obstructed before he attempted to cross it and consequently should not have made the effort. It is further argued that when his horse became frightened and refused to go across, he should not have put himself in peril in an effort to save the horse from danger by the passing train. In support of these propositions we are referred to the case of Louisville & Nashville R. R. Co. v. Armstrong, 127 Ky., 367, in which it was held that the plaintiff deprived himself of the right to recover damages on account of the injury sustained when his horses became frightened at a dead horse the defendant had negligently left near a public road. But in that case, as appears from the opinion, the plaintiff had seen the dead horse three or four hours before he was injured, at which time the horses he was driving became badly frightened at it, and it was admitted that the plaintiff, with knowledge of the presence of the dead horse and the fact that his team became badly frightened at it a short time before, attempted to force his horses to pass it, and when they refused to do so, he commenced to whip them, thereby increasing their fright. As said by the court:

"It was a plainly discernible obstruction, and danger prominently visible, the presence of which, as well as the

fact that the horses were afraid of it, was well known to him. In attempting to drive by it in the manner adopted, he and Lewis must be presumed to have understood the risk they ran and the probable consequences. These facts being admitted, the court should have decided as a matter of law that the presence of the dead horse on appellant's right of way was not the proximate cause of appellee's injuries. but that they were caused by his own negligence."

Also to Chesapeake & Ohio Ry. Co. v. Lang's Admx., 135 Ky., 76, in which it appears that Lang, who was a section hand in the service of the company, was killed by a passenger train while he was attempting to remove a tricycle, that he had been riding, from the track. In that case the court said that the jury should have been instructed that if they believed from the evidence that Lang jumped from the tricycle, and when he was at a point of safety, with knowledge of the approach of the train, he undertook to take the tricycle off the track, and thus lost his life, he took the risk.

Another case is Cox v. Illinois Central R. R. Co., 143 Ky., 478. In that case, in speaking of the care to be observed by a traveler in approaching a highway crossing on which a train is standing, it was said:

"If an engine is standing near a crossing that the public have the right to use, the presence of travelers on it must be anticipated; and if the engine is permitted by those in charge of it to make unusual or unnecessary noises, unless the safety of persons or property require it, and the horse of a traveler is frightened thereby and injury results, the company will be liable whether the persons in charge of the engine saw the traveler or not, or knew he wanted to cross, unless it be that the traveler is guilty of such contributory negligence as would defeat a recovery. On the other hand, when a traveler approaching a crossing near which an engine is standing, and before his horse becomes so much frightened as to cause accident or injury, sees and knows that it is making noises or letting off steam, although either or both may be unusual and unnecessary, he should not attempt to approach the engine or cross the track without notifying in some way the persons in charge of the train or engine that he desires to cross and that his horse is liable to become frightened. If he does this, and the persons in charge of the engine can with safety to persons and property prevent the engine from making noises or letting off

the steam that alarmed the traveler and were calculated to frighten the horse, they should do so. But if they do not or cannot with safety do so, then the traveler must remain in his place of safety or take the risk of attempting to cross."

In Pedigo's Admr. v. Louisville & Nashville R. R. Co., 24 Ky. L. R., 338, also relied on to sustain the contention that the plaintiff's negligence caused the injury of which he complains, the court found, after relating the facts connected with the transaction, that "he voluntarily placed himself in the position where he was brought in collision with the cars without the slightest fault on the part of those in charge of the train."

We do not think any of these cases are controlling authority in this one, as the facts of this case take it out of the rule announced. In the Lang case the railroad company was not guilty of any negligence, and in the Pedigo case the injury was brought about by the reckless conduct of Pedigo at a time when the company was free from fault. In the Armstrong case Armstrong knew the danger of attempting to force his horse by the obstruction and voluntarily took the risk. The Cox case merely lays down general rules to be observed at grade crossings.

Here the mare the plaintiff was driving was gentle and accustomed to trains. When the plaintiff attempted to cross the track, he had no reason to anticipate that she would not go between the cars or that she would become frightened at the cars standing near the crossing. Under these circumstances, he was not guilty of any degree of negligence in attempting to cross the tracks, but, on the other hand, the defendant, under the evidence for plaintiff, was guilty of negligence in the respects heretofore mentioned.

Now was he guilty of such contributory negligence as would defeat a recovery because he received the injuries complained of when attempting to hold his mare after she became frightened? We think not. When the plaintiff heard the fast-running passenger train coming and found himself in the buggy, with a frightened horse, almost immediately on the track of the approaching train, he did only what any sensible, prudent man would have done. He jumped out of the buggy and naturally and reasonably undertook to hold his mare to prevent the buggy from being struck by the passing train. He did not voluntarily, or with knowledge of dangerous con-

ditions, assume any risk, nor did he, after being placed in a position of peril, act in a reckless or imprudent manner.

It is true that when he got out of the buggy he was in a safe place and that if he had not attempted to hold his mare, no injury would have happened to him. He could have stood by and let his mare do as she pleased. He could have taken the chance of the mare being killed and the buggy being demolished; but he was not, under the conditions as they appeared to him in the exercise of a reasonable judgment, obliged to stand quiet and make no effort to prevent injury to his mare or buggy. Possibly neither would have been injured, but the probabilities were that they would have been, and the plaintiff had the right to do what he believed at the time was necessary to prevent the impending danger.

A man situated as plaintiff was is neither expected nor required to abandon his property to danger, when acting in a reasonable way, he believes he can save it. He has a right, acting as a reasonably prudent man would under the circumstances, to make an effort to protect his property, and if in so doing he is injured, it is a question for the jury to say whether, under all the circumstances, he acted in such a manner as a reasonably prudent man would have acted: Sherman & Redfield on Negligence, 6th Edition, volume 1, section 85a; Illinois Central R. R. Co. v. Siler, 229 Ill., 390; 15 L. R. A. (n. s.), 819; Page v. Bucksport, 64 Maine, 51, 18 Am. Rep., 239; Berg v. Great Northern Ry. Co., 70 Minn., 272, 68 Am. St. Rep., 524.

There are some cases that take a contrary view of this question, but we are not disposed to follow them. They do not seem to us to be sound in principle and besides are not in accord with the weight of authority. Among these cases are: Seale v. Gulf, Colorado & Sante Fe Ry. Co., 65 Tex., 274, 57 Am. Rep., 602; Chattanooga Light & Power Co. v. Hodges, 109 Tenn., 331, 60 L. R. A., 459; Cook v. Johnson, 58 Mich., 437, 55 A. R., 703.

For the error of the court in refusing to give an instruction on the subject of the obstruction of the crossing, the judgment is reversed, with directions for a new trial in conformity with this opinion.