## Louisville & Nashville Railroad Company v. Jenkins.

(Decided February 16, 1916.)

### Appeal from Hopkins Circuit Court.

1. Railroads—Duty of Railroad Company to Persons or Teams Near Track—No Duty to Slacken Speed or Give Signals.—Where a team was left standing near a railroad track by the owner, where there was no public crossing, and neither the owner nor team was near enough to be struck by passing trains, the railroad company owed to him no duty to slacken the speed of its trains or to give signals of their approach.

2. Railroads—Same—When Allegation Should be Stricken From Petition.—Tested by the above rule the averments of the petition that the unusual speed of the train and its failure to signal its approach caused the fright of the team and consequent injuries to the owner, did not state a cause of action; therefore the court erred in overruling the railroad company's motion to strike them out.

3. Railroads—Negligence—When Allegations of Petition Not Sufficient.—The allegation of a petition that the fright of plaintiff's mules was caused by the sight and noise of a train, is not sufficient to state a cause of action, in the absence of the additional allegation that such noise was unusual or unnecessary.

4. Railroads—Operation—Duty of Railroad Company as to Persons or Teams Not on Track.—There is no rule of law imposing upon a railroad company the duty to maintain a lookout for the presence of persons or teams near the track, or to use ordinary care to discover their presence. As to persons or teams not on the track, the duty to observe care begins only when their danger is discovered.

5. Railroads—Duty to Person or Team Not on Track—When Case Should Not go to Jury.—There being no duty on the part of the railroad company's trainmen to observe care to discover the presence of persons or teams near the track, but only the duty to use ordinary care to prevent injury to them after discovering their peril, and there being no evidence to show that the railroad company's servants in charge of the train discovered plaintiff's peril in time to do anything to prevent his injury; and the allegation of the petition as to the railroad company's negligence in this respect being the only one even inferentially stating a cause of action, the court should have peremptorily instructed the jury to find for the railroad company.

6. Railroads—Contributory Negligence—When it Will Prevent Recovery.—Where plaintiff in his amended petition states that if hitched or removed to a greater distance from the track his team would not have become frightened by a passing train, and it appears from his own evidence that even if the train had whistled he did not have time to so hitch or remove them, after hearing the

signal, his failure to so hitch or remove the team before leaving them is such contributory negligence as will prevent a recovery.

7. Negligence—Contributory Negligence—When Not Excusable.— Where the danger of damage to his mules and wagon was caused by plaintiff's own contributory negligence, such negligence will prevent a recovery by him for injuries sustained in attempting to prevent damage to them; leaving out of consideration whether or not he was negligent in the method adopted in such attempt.

LAFFOON & WADDILL and BENJAMIN D. WARFIELD for appellant.

GORDON, GORDON & COX and VIRGIL Y. MOORE for appellee.

Opinion of the Court by Judge Settle.—Reversing.

This is an appeal from a judgment of the Hopkins circuit court, upon a verdict awarding appellee $1,000.00 damages for personal injuries resulting, as alleged, by the servants of the appellant so negligently operating a train as to frighten his mules, attached to a wagon, and cause them to run against or over him. The accident happened near Madisonville, at a place called Reinecke, where the Reinecke Coal Mining Company, which is engaged in mining coal, has a mine sidetrack, coal tipple and other appliances necessary for use in its business, in part situated on appellant's right of way.

It appears from the allegations of the petition and evidence that on the day of the accident appellee drove to the Reinecke mine in a wagon drawn by a pair of mules to deliver a load of mine props, purchase coal and haul it to his home six miles distant. After unloading the props appellee was delayed in getting his wagon loaded with coal by reason of there being four or five other wagons to be loaded before his. While thus delayed he left his wagon and mules where they were separated from the track by a railing, which at that point ran some distance parallel with the track. Leaving the mules unhitched appellee walked a distance of about fifty feet to where some men were standing and began a conversation with them. While thus engaged a pay train owned by appellant and being operated by its servants passed the station without stopping. The mules, becoming frightened by the passing train, attempted to run away, upon seeing which appellee ran to them, seized them by their bridles and attempted to hold them. In making this attempt he was thrown by one of the mules against the

railing standing between them and the track and to the ground, and while upon the ground the wagon ran over him, thereby causing the injuries received by him.

It was alleged in the petition "that the defendant so negligently ran, managed and operated one of its engines and cars over and upon said railroad, approaching and passing said place, without signal or warning of its approach, and at an unusual and rapid rate of speed, that the sight of said train and the noises produced by the same frightened the team drawing the plaintiff's wagon, and caused them to become unmanageable and to run away * * *; that said train was running westward and at an unusual time, and that its approach was unexpected by plaintiff, and that the same was being negligently run, and operated at a grossly excessive, unusual and unnecessary rate of speed, and that the defendant negligently and unlawfully failed to give any warning of the approach of said train to said place by bell, whistle or otherwise. That defendant's agents and servants in charge of and operating said engine and train, saw and knew or in the exercise of ordinary care would have seen and known of the perilous position of plaintiff in time to have avoided injuring him or frightening his team by the use of ordinary care, but failed to use such care to avoid injuring plaintiff, and that as the direct and proximate result of the said negligence of said defendant, and its agents and servants, the plaintiff received and suffered the injury of which he complains. The plaintiff states that he did not see nor know of the approach of said engine and train, and in the exercise of ordinary care could not have seen same nor known thereof in time to have avoided or prevented the injury."

The above allegations were followed by others that the court, upon appellant's motion, struck from the petition, the stricken allegations being to the effect that the Reinecke mine was a place continually used by men and teams in loading and hauling coal, in close and dangerous proximity to the railroad tracks and on appellant's right of way, and had been so used for more than fifteen years, and by more than two hundred employes of the Reinecke Mining Company, with the consent and acquiescence of appellant, by reason of which the latter knew that the safety of persons and property required and demanded that its servants in operating its trains at and approaching the Reinecke mines should keep a diligent lookout

for persons on or near its tracks and give proper signals and warning of the approach of its engines and trains.

The answer of appellant contained a traverse and plea of contributory negligence, and the latter plea was controverted by reply, thus completing the issues.

It will be observed that it is not alleged that there was a crossing at the Reinecke coal mines or that it is a regular stopping place for appellant's trains, or that appellee's wagon and mules were on appellant's track or otherwise so situated as that they could have been struck by a passing train. On the contrary, while on the appellant's right of way they were at a distance of six or eight feet from its track and separated therefrom by the secure railing. In view of this situation we see no force in appellee's contention that appellant owed to him the duty of giving signals of the coming of its train or of slackening its speed in approaching the place of the accident. If the speed of trains is to be reduced at such places, to prevent the frightening of teams that may be at all times during the day expected to be found standing thereat, contiguous to the main track, it would seriously interfere with the needs and demands of the traveling public and of commerce as well. Especially would this be true as to fast through passenger and mail trains and fast through freight trains, which make no stops at such places, as such trains must be operated at high speed in order to maintain their schedules and make connection at their terminals.

We have repeatedly held that the failure of those in charge of a train to moderate its speed under the circumstances appearing in this case is not negligence as to one situated as was appellee. L. & N. R. Co. v. Redmon's Admx., 122 Ky., 385; L. & N. R. Co. v. Dalton, 102 Ky., 290; Dolfinger v. Fishback, 12 Bush, 474. Nor did appellant owe to teams and the owners thereof, situated as was appellee, the duty of giving signals of the approach of the train. It was not alleged in the petition that Reinecke was a place at which appellant was required, either by statute or its rules, to give signals of the approach of its trains. As previously remarked, there was no crossing at or near the place of the accident. Appellee was not approaching a crossing, nor was his team near enough to appellant's track to be in any danger of injury by contact with the train. If, under such circumstances as are here presented, appellee was

entitled to signals and to a slackening of the speed of
the train, they should be given for the benefit of every
plowman in the fields alongside the railroad and every
person driving a team along roads paralleled by a 'rail-
road, although not at or near a public crossing.

In L. & N. R. Co. v. Redmon's Admr., *supra,* we said,
quoting with approval from Shackelford's Admr. v. L. &
N. R. Co., 84 Ky., 43:

" 'Railroad trains must give the customary signals
at public places or public crossings. The failure to do so
is negligence, but this is required for the safety of pas-
sengers, trainmen, and the public using, and who have
the right to use, the track at such public ways, and not
for the purpose of protecting those who, as trespassers,
may be crossing or using the tracks elsewhere. The
instances are numberless upon every railroad of per-
sons living along it, and having to and being in the habit
of crossing the track to pass from the dwelling to the
outbuildings, or vice versa; and to require the companies
in all such cases to signal the approach of their trains
and to presume and guard against the presence of per-
sons upon the track would not only be unreasonable, but
detrimental to public travel.' In Davis' Admr. v. C. &
O. Ry. Co., 116 Ky., 144, still another case very much
like the one at bar, the petition alleged that plaintiff's
intestate was killed 'at or near the public crossing.' In
the opinion we find the following statement of the law:
'From the averments the court concludes that the in-
testate had the right to use the private crossing, but
under the rule that a pleading must be construed most
strongly against the pleader, the averment that she was
killed "at or near the crossing" is equivalent to the aver-
ment that she was not killed on it, but near the crossing;
hence, she was a trespasser. This being true, under the
well settled rule of this court, those in charge of the
train owed her no duty except to use reasonable care to
save her after discovering her peril. As she was not on
a crossing when killed, it can not be claimed that, as to
the intestate, it was negligence to fail to give signals on
the approach to either the private or public crossing.'
L. & N. R. R. Co. v. Vittitoe's Admr., 19 Ky. Law Rep.,
612. We do not think it was made to appear in this
case that appellant's trainmen failed to give the cus-
tomary signals in approaching the streets and public
crossing in New Haven; but if they had not done so, it

was not negligence as to the deceased, who, as repeatedly stated, was not at the time of the accident on a street or the public crossing of the town, but a trespasser on appellant's right of way and within its inclosure.''

In L. & N. R. Co. v. Vittitoe's Admr., *supra,* it is said:

''The evidence for the plaintiff in this case does not show whether or not any bell was rung at the road crossing mentioned, and some of the witnesses who were in the field some distance from that point say they did not hear the whistle sounded. The law imposes a duty to blow the whistle or ring the bell on approaching a crossing, not to give trespassers notice, but to give notice to the public, who have a right to enjoy the use of the crossing. If the boy was not on the crossing, the failure of the company to blow the whistle or ring the bell would not make them guilty of negligence as to the boy.'' C., N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky., 445; L. & N. R. Co. v. Cummins' Admr., 111 Ky., 333; Parkerson's Admr. v. L. & N. R. Co., 25 R., 2260; L. & N. R. Co. v. Mulloy's Admx., 122 Ky., 219; Newport News, etc. Co. v. Dueser, 97 Ky., 92.

If the failure of those in charge of a train to give the signals required of it by law in approaching a crossing or public place is not negligence as to one occupying the track where he has no right to be, how can it be said with any show of reason that such failure is negligence as to one who is not, or whose team is not, on the track or near enough thereto to come in contact with the train? All that has been said with reference to the failure of appellant to give signals of the approach of its train to Reinecke, if there was such failure, applies with equal force to its failure to slacken the speed of its train in approaching and passing that place. It is true that much of appellee's evidence tended to show that the speed of the train was thirty or forty miles an hour, but appellant's servants in charge of the train testified that it did not exceed twelve or fifteen miles an hour. Appellee and several of his witnesses also testified that if the train sounded its whistle or rang its bell in approaching and passing Reinecke such signals were not heard by them. Upon the other hand, those in charge of the train testified that the whistle was sounded at the crossing half a mile east of Reinecke and again at the private crossing two hundred yards east thereof. The engineer and fireman testified that the engine bell was

ringing in approaching and passing Reinecke, and two employes of the Reinecke Coal Mining Company corroborated their statements as to the blowing of the whistle. In view, however, of the proof as to the noise made by the coal tipple when the train passed, it is not surprising that appellee and his witnesses failed to hear both the whistle and bell.

Tested by the authorities, *supra*, the averments of the petition as to the unusual speed of the train and its failure to give the signals did not state a cause of action; therefore the trial court erred in overruling appellant's motion to strike them out.

It is, however, insisted for appellee that the averments of the petition and amendment as to the mules being frightened by the sight and noise of the train and that their fright and his consequent peril was seen by appellant's servants in charge of the train, or could, by the use of ordinary care, have been discovered by them in time to have prevented his injuries, did state a cause of action, which received support from some of the evidence introduced in his behalf, conducing to prove that the noise of steam which appellant's servants in charge of the engine permitted to escape therefrom as it passed the mules, was the main cause of their becoming frightened; but this evidence stops short of showing that the escape of the steam was unnecessary, or that the noise made by it was unusual; that is, greater than is ordinarily made by the escape of steam from passing trains. The allegation of the petition that the fright of the mules was caused by the sight and noise of the train is not sufficient in the absence of the additional allegation that such noise was unusual and unnecessary; and the petition wholly fails to allege the escape of the steam or that the escape thereof was unnecessary or the noise unusual, both of which allegations were necessary to make good the cause of action attempted to be stated. We have more than once held that a railroad company is liable for injuries to a traveler on the highway whose horse or horses are frightened by a train, if, after discovering the fright and danger, the railroad company's servants do not use ordinary care for his safety. L. & N. R. Co. v. Harrod's Admr., 155 Ky., 155; L. & N. R. Co. v. Allen, 153 Ky., 525; L. & N. R. Co. v. McCandless, 123 Ky., 121; L. & N. R. Co. v. Street's Admx., 139 Ky., 186. It was, however, also distinctly held in L. & N. R. Co. v.

Harrod's Admr., *supra,* that those in charge of a train are not required to keep a lookout for teams on adjacent highways.

In L. & N. R. Co. v. Smith, 107 Ky., 178, we also held that a railroad company does not owe to travelers upon an adjacent parallel highway the duty of discovering that they have become imperiled by having their horses frightened by the sounding of the whistle and ringing of the bell, but only reasonable diligence to prevent injury after discovering such peril. In the opinion it is in part said:

"* * * But there is no rule of law that would require employes in charge of an engine to discover the condition of a team or persons on a highway running parallel with the railroad. Lamb v. Old Colony Railroad Co., 140 Mass., 79 (54 Am. R., 449, 2 N. E., 932). While it is not their duty to discover such things, yet if the employes do see the apparent danger, it then becomes the duty of such employes to use (ordinary) care to avert the injury. As to persons not on the railroad, the obligation to observe care begins when the danger is discovered."

The evidence of appellee fails to show that appellant's servants in charge of the train discovered the fright of appellee's mules or his peril in time to have prevented his injuries. They were not charged with any duty to maintain a lookout for the presence of the mules near the track, or to use ordinary care to discover their presence or appellee's peril; therefore the recovery was unauthorized in the absence of any evidence whatever tending to show that after the discovery of the fright of the mules and appellee's peril they could have done anything to prevent the injuries sustained by the latter. According to the uncontradicted testimony of the engineer and fireman, the mules did not become frightened until the engine had reached them and the train was in the act of passing them; and if this was true, neither the fright of the mules nor the peril of appellee arose or existed until it was too late for anything to be done by the trainmen to prevent the injuries he sustained. Moreover, if, as some of the witnesses of appellee testified, the fright of the mules was caused by the escape of steam as the engine reached or passed them, no precaution that might have been taken by the trainmen could have prevented what followed.

Even if appellee had alleged that the fright of the mules was caused by the escape of steam from the engine, as he and some of his witnesses testified, there being no evidence that its escape was otherwise than necessary or customary in the operation of the engine, or that the noise thereof was unnecessary and unusual, no negligence in this particular can be said to have been shown.

Appellee's case is not strengthened by the fact that the train which frightened his mules was an extra train; that is, a train not running on regular schedule. In Blankenship's Admr. v. N. & W. Ry. Co., 147 Ky., 260, we held that the railroad company did not even owe to its own employe, a track walker, who was run over and killed by an extra train, of the approach of which he was unadvised, the duty of notifying him through the section foreman or otherwise of the coming of such extra train; and if a railroad company does not owe to one of its employes whose work requires him to be on the track, the duty of informing him of the time of the coming of an extra train, by what process of reasoning can it be said to owe such duty to a person whose team is not on the track, though close enough thereto to be subjected to possible fright by the passing train?

The case of C., N. O. & T. P. Ry. Co., etc. v. Winningham's Admr., 156 Ky., 434, relied on by counsel for appellee, is not authority in point.

In that case it was held that where a coal company, by authority of the railroad company, was engaged in constructing, according to specifications furnished by the latter, a tipple across its track at an elevation of thirty feet above same, and the duties of the coal company's employes, in doing the work of construction, required them to remain in close proximity to the railroad track and much of the time to cross it and be upon it, and such work had continued for ten days; in such state of case the railroad company was charged with notice of the presence of the coal company's workmen at that point and of their use of its track, and hence owed them the duty of giving warning of the approach of trains; and was liable in damages for the death of one of the employes at the tipple caused by its failure to give such warning.

It will readily be seen that the facts appearing in the case, *supra,* are wholly unlike those of the instant

case. In that case the railroad company, by authorizing the coal company to construct the tipple across and over its track and because of its knowledge that the work of construction would necessarily compel the employes of the former to frequently cross and be upon the track and thereby expose themselves to the danger of being run over by passing trains, voluntarily assumed and imposed upon itself the duty to take such reasonable and customary precautions, in running its trains by the tipple, as would protect the workmen thereat from being run over by them; that is, that in running its trains by the tipple it would use ordinary care to give the usual signals of their approach, the failure to do which caused the death of Winningham. In the instant case, however, no such duty was imposed by law or assumed by the appellant. The coal company had no such connection with it as could have created such a duty upon appellant's part. Reinecke was not a place at which appellant's trains were accustomed to stop. The coal company's tipple was not across or above its track, and there was nothing in the relations between it and the coal company that required the use of its track by the employes of the latter, its customers or others. The only duty it owed to the appellee was to exercise ordinary care to prevent his injuries after discovering his peril, and there was no evidence tending to show that it discovered the fright of the mules or appellee's peril in time to do anything to prevent his injuries. This being the only one of the several grounds attempted to be alleged in the petition, as amended, that can be said to even inferentially state a cause of action, and there being no evidence to support it, the trial court should have granted the peremptory instruction directing a verdict for appellant, as requested by it after the introduction of appellee's evidence and again at the conclusion of all the evidence.

We are further of the opinion that appellee's contributory negligence furnished another equally potent reason for the granting of the peremptory instruction. According to his own testimony, after he drove and placed his team in line behind four or five other wagons that by reason of their earlier arrival at the tipple took precedence of his in being loaded with coal, he left his mules attached to the wagon, unhitched and unattended, and walked away from them a distance the length of

three wagons, or about fifty feet, to where some men were standing near the tipple, which was then in operation and making a great noise. He immediately entered into a conversation with these men, which was continued until some one announced that the train was coming. What followed can best be told in appellee's own words, appearing in the bill of evidence:

"A. * * * When somebody said yonder comes the train and I started to run for the team, and by the time I got hold of them the train was there. Q. Why did you run to your team? Q. I run to them to take care of them. Q. What was the first knowledge you had of the approach of the train? A. Some one said yonder is the train. * * * Q. When you got hold of your team tell the jury what happened to you? A. I got hold of the team and the train split by; some way or other the lead mule got her harness in here and put me across that railing right across my spine here, and that is all I know about it. Q. The mule got you between the railing something like that (indicating)? A. Yes, sir, a four or two by six. Q. Was your back against that railing? A. Kind of my side. * * * Q. What effect did the surging of the mule have upon you when you were in that position? A. As soon as the team turned me loose I walked about ten steps and sank down. Q. How long were you in the position between the mule and the rail? A. Two or three minutes; the mule ran against me. Q. What caused the mule to turn away from that position? A. It was the steam I suppose."

It does not appear from the evidence that the fright thus given the mules resulted in any injury to them or the wagon, and we think it patent from appellee's own testimony that if he had been at the heads of the mules when the train passed they would not have been seriously frightened; nor is it probable that the injuries sustained by him would have been received. Moreover, it is alleged in the amended petition, "that said team was composed of ordinarily gentle and well disposed animals, and *if hitched at the place of the accident or properly secured, or removed to a greater distance from the railroad track, said team would not have been frightened and would not and could not have caused any injury to the* plaintiff." It is true this allegation was preceded by another, argumentative in character, to the effect that if the train had been run at a more moderate speed and had given the

usual signals of its approach, appellee might or could have known of its coming in time to have removed his team to such a distance as would have prevented them from becoming frightened. But this could not have been true, for if the train was running at the high rate of speed claimed by appellee, and it had sounded its whistle at the private crossing 200 yards east of Reinecke, as he further. claimed it should have done, it would have been physically impossible for him, after hearing the whistle, to have gotten his team any considerable distance from where he left it, before the arrival of the train at Reinecke. The argument contained in the allegation is, therefore, illogical, and its only effect is to give emphasis to the admission in the succeeding allegation that ''if hitched at the place of the accident or properly secured or removed to a greater distance from the railroad track, said team would not have been frightened and would not and could not have caused any injury to the plaintiff.''

This admission necessarily suggests the inquiry: if hitching the team at the place of the accident or its removal to a greater distance from the railroad track would have prevented it from becoming frightened and appellee from being injured, why did he not, before leaving the team, in anticipation of the probable coming of a train, hitch it at the place of the accident or remove it to a greater distance from the railroad track? As he did not take these precautions, which, if taken, admittedly would have prevented his injuries, the conclusion is inevitable that his failure to do so must be regarded as culpable negligence, sufficient of itself to bar the recovery of damages sought by him. The evidence shows no negligence whatever on the part of appellant. L. & N. R. Co., et al., v. Benkey's Adm'x, 164 Ky., 798; Hummer's Ex'r. v. L. & N. R. Co., 128 Ky., 486; L. & N. R. Co. v. Franklin's Adm'r., 165 Ky., 595.

The negligence of appellee cannot be excused upon the ground that his injuries were received in attempting to save his mules and wagon from injury. Without considering whether there was any negligence in the method adopted by him of preventing injury to his property, it is sufficient to say that the danger which menaced the property was not caused by any negligence of the appellant's servants in charge of the train, but by his own negligence in leaving the mules unattended and unhitched

where they would be subjected to fright from a passing train; or in failing to remove them to a place where the coming of a train would not reasonably have been expected to frighten them. As said in Taylor Coal Co. v. Porter's Adm'r., 164 Ky., 523:

"It is well settled that a person who attempts to rescue one who has been put in peril by the negligence of another may maintain a cause of action for injuries sustained in attempting his rescue. But this right of action rests entirely upon the ground that the peril to which the person was exposed was caused by the negligence of the person sought to be made liable. Sherman & Redfield on Negligence, Vol. 1, Sec. 85; Lemay v. Springfield St. Ry. Co., 210 Mass., 63, 37 L. R. A. (N. S.), 43, and cases cited in note; Norris v. Atlantic Coast Line Ry. Co., 152 N. C., 505, 27 L. R. A. (N. S.), 1069.

Such being the rule applicable where human life is involved, *a fortiori* must it be applicable where only property is involved. From whatever viewpoint considered, the evidence was insufficient to authorize the submission of the case to the jury; hence the trial court should have peremptorily directed a verdict for the appellant.

Judgment reversed and cause remanded for a new trial consistent with the opinion.