## Louisville & Nashville Railroad Company v. Mercer.

(Decided December 21, 1917).

### Appeal from Warren Circuit Court.

1. **Railroads—Duty to Maintain Lookouts.**—There is no rule of law imposing upon a railroad company the duty of maintaining a lookout for the presence of persons or teams near the track, or to use ordinary care to discover their presence; but as to persons

or teams not on the track the duty of the servants of the railroad company to observe ordinary care does begin when the danger of such persons or teams is discovered.

2.   Railroads—Frightening Animals—Evidence.—Where the evidence was conflicting as to whether the engineer of a railroad engine exercised ordinary care in preventing a runaway of the frightened team near the track after he had discovered the danger, the case was properly submitted to a jury for determination and the defendant's motion for a directed verdict was properly overruled.

3.   Damages—Punitive Damages—Gross Negligence.—Gross negligence upon the part of the defendant will justify a recovery of punitive damages.

BENJAMIN D. WARFIELD and SIMS, RODES & SIMS for appellant.

PROCTOR & GARDNER for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellee, J. E. Mercer, who was the plaintiff below, operated a coalyard in Bowling Green at the corner of Clay and Twelfth streets. He had a frame coal office situated on the corner of his yard about fifty feet from a switch which extended from the appellant's main track. Immediately adjoining the office, and under the same roof, Mercer had scales upon which he weighed coal wagons. He also weighed for other persons whenever they applied; and one of his customers was a man who owned a lime crusher in the neighborhood.

On the occasion of the accident which caused this suit the driver of a team belonging to one Larmon had procured a load of lime at the lime crusher and had hauled it to Mercer's scales to be weighed. The team was driven by Bailey Stinson, Lyman's driver. When Stinson drove the wagon upon the scales and Mercer had weighed it he told Stinson that the load was light; and Stinson then began to throw sufficient lime on the wagon to complete the load. At Stinson's request, Mercer was holding the horses while Stinson was shoveling on the additional lime. Mercer was holding the horses by the lines and was standing alongside the horses when one of the defendant's switch engines with several coal cars attached came along and frightened the horses. The steam escaping from the engine caused the horses to prance, and immediately thereafter a blast of the whistle caused them to lunge against the side of the shed; and, at a second blast the horses broke away and ran a short distance, dragging Mercer with them. He finally stopped them by running them against a telephone pole.

Mercer brought this action for damages alleging negligence upon the part of the company's train crew in making unusual and unnecessary noises in whistling and ringing the bell as the engine passed the plaintiff's office, thereby causing the team to become frightened and run away, as above indicated. The answer contained a traverse and a plea of contributory negligence. Mercer recovered a verdict for $1,000.00, and the company appealed.

Appellant's first contention is, that the court should have sustained its motion for a directed verdict at the conclusion of all the testimony. In this connection appellant contends that the team which caused the damage was not on the railroad track, but was only nearby in the coal yard, and that the company therefore owed no lookout duty to the plaintiff. This contention is based upon the theory that it is the duty of the engineer to keep his eye on the track and that while performing that duty he cannot also keep a lookout for strangers on adjoining highways. That rule, however, is modified to the extent of holding a railroad company responsible for injuries caused to travelers on the adjoining highways by unusual and unnecessary noises of the train whenever the engineer or those in charge of the train knew of the danger thereby caused to the frightened team in time to prevent the injury.

It is true there is no rule of law imposing upon a railroad company the duty of maintaining a lookout for the presence of persons or teams near the track, or to use ordinary care to discover their presence; but as to persons or teams not on the track the duty to observe ordinary care does begin when their danger is discovered. And this is the rule applicable to this case.

In L. & N. R. R. Co. v. Jenkins, 168 Ky. 518, we stated the rule as follows:

"We have more than once held that a railroad company is liable for injuries to a traveler on the highway whose horse or horses are frightened by a train, if, after discovering the fright and danger, the railroad company's servants do not use ordinary care for his safety. L. & N. R. Co. v. Harrod's Admr., 155 Ky. 155; L. & N. R. Co. v. Allen, 153 Ky. 525; L. & N. R. Co. v. McCandless, 123 Ky. 121; L. & N. R. Co. v. Street's Admrx., 139 Ky. 186. It was, however, also distinctly held in L. & N. R. Co. v. Harrod's Admr., *supra,* that those in charge of a train are not required to keep a lookout for teams on adjacent highways."

To the same effect see L. & N. R. Co. v. Smith, 107 Ky. 178.

In this case the engineer testified that he did not see the fright of the team until after he had blown the whistle and after the team had run away. In this, however, he is flatly contradicted by three witnesses, who testified that the engineer was looking directly at the horses and was laughing, when they started. Under this proof it was for the jury to say whether the engineer knew of the danger in time to prevent it, and the court properly refused to direct the jury to find for the defendant.

It is next insisted that the damages are excessive. Mercer was sixty years of age; and, while it does not now appear that he has been permanently injured, he was badly bruised and shocked by reason of the dragging to which he was subjected. He testified that he had been unable to do little more than one-half as much work as he formerly did, and that his business had necessarily been badly neglected by reason of his inability to attend to it. Under the circumstances we are not prepared to say that the finding was excessive.

Again, it is contended that the court erroneously instructed the jury, and that the judgment should be reversed for this reason, if for no other. The court gave the jury eight instructions. The first instruction directed a verdict for the plaintiff in case the engineer negligently caused the horses to run away by causing unusual and unnecessary noises to be made by his engine after he had discovered the frightened condition of the horses; while the second instruction is the converse of the first, and directed a verdict for the company in case the engineer did not know of the frightened condition of the horses. The third instruction further directed the jury to find for the company although the engineer knew of the frightened condition of the horses, unless they should further believe from the evidence that a fairly prudent person would reasonably anticipate that further fright of the horses would result in the injury to the plaintiff.

The fourth instruction made it the engineer's duty to give the crossing signals by whistling; and, it further told them that if the horses were frightened by these signals the jury should find for the company, unless the jury should further believe that the engineer knew of the frightened condition of the horses before he blew the whistle and could reasonably anticipate their further fright and probable injury to the plaintiff by the use of

such signals, in which latter event they should find for the plaintiff.

The fifth instruction gave the usual measure of damages, adding, however, a provision that in case the accident resulted from the gross negligence of the defendant's engineer the jury might find punitive damages. The sixth instruction defined negligence and ordinary care; the seventh defined gross negligence; and the eighth authorized a verdict by nine jurors.

Omitting from consideration for the present so much of the fifth instruction as authorizes punitive damages, we feel compelled to say that a careful reading of the instructions fails to show any error that was prejudicial to the substantial rights of the appellant. They submitted to the jury the contentions of the respective parties to the case, in proper language. The distance from the track to the scales was only about 58 feet, and there is abundant evidence tending to show that the escaping steam and the blasts of the whistle were not only unusually loud at that point, but that the defendant's engineer was guilty of negligence in not exercising ordinary care to prevent the accident after he saw the alarm of the team.

There was proof tending to show that the engineer was not required to use his whistle except when it was so designated by a whistling post; and, there was no whistling post at this point. This proof corroborates the plaintiff's contention that the whistle was not only unusually loud, but that it was unusual for the trains to whistle at this crossing.

After the engineer knew that the team was frightened it was his duty to use ordinary care to prevent further fright or injury; and this duty was made particularly plain by the instructions. L. & N. R. Co. v. Allen, 153 Ky. 252; L. & N. R. Co. v. Stanford, 172 Ky. 511.

In L. & N. R. Co. v. Hulett, 171 Ky. 501, the court said:

"Under the authorities from this court, to which we have referred, if the horse at that time was in a frightened and nervous condition, and the agents and servants of the defendant knew this, and with that knowledge they started the car in an unusual and unnecessary way, and caused it to produce an unusually loud and unnecessary noise which would be reasonably calculated to frighten the horse, the defendant would be liable for the consequences."

Neither was the appellee guilty of contributory negligence in attempting to hold the frightened team. Harvey v. I. C. R. R., 159 Ky. 497, 167 S. W. 875. Indeed, this defense, though set up in the answer, is not urged upon this appeal.

Finally, in our opinion, it cannot be said that the instruction authorizing punitive damages prejudiced the appellant. If the engineer was guilty of gross negligence which resulted in the injury to the appellee, punitive damages would be justified; and, if he saw the frightened team in time to prevent the accident, and deliberately blew the whistle, thereby doing all that was necessary to cause the runaway, he was guilty of gross negligence.

The amount of the verdict, moreover, does not indicate at all clearly that the jury gave punitive damages. On the contrary, it would be reasonable to say that the damages were only compensatory; but, as above stated, if the testimony of the appellee's witnesses is to be believed, the engineer was guilty of such gross negligence as justified punitive damages.

Upon the whole case, we find no error to the substantial rights of the appellant.

Judgment affirmed.